**TRAVELERS INSURANCE COMPANY**

v.

**LILJEBERG ENTERPRISES, INC.**

Civ. A. No. 92–58.

United States District Court,
E.D. Louisiana.

Aug. 13, 1992.

Brent B. Barriere, S. Ault Hootsell, III, Phelps Dunbar, New Orleans, La., for plaintiff.

Kenneth C. Fonte, Golden & Fonte, Metairie, La., for defendant.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the Motion for Summary Judgment of Travelers Insurance Company ("Travelers") seeking to recover rents due under two lease contracts from defendant, Liljeberg Enterprises, Inc. ("LEI"). Having reviewed the record, memoranda of counsel, exhibits and the law, the Court finds that summary judgment is appropriate and grants the motion by Travelers.

## FACTS

The facts material to the execution and operation of these leases are not in dispute. LEI initially entered into a lease of space in the St. Jude Medical Office Building ("the Building") on May 1, 1985. In this "First Lease", LEI leased 11,893 square feet of space on the seventh floor of the building from St. Jude Medical Office Building Limited Partnership ("Partnership") for a term of ten years, commencing August 1, 1985 and ending July 31, 1995, for a basic monthly rental of $14,866.25. Pursuant to this First Lease, the Partnership was authorized to grant a mortgage or other security device with respect to the Building to an "Institutional Mortgagee." The definition of "Institutional Mortgagee" provided in the First Lease includes insurance companies, such as mover, Travelers.

On October 10, 1985, Travelers loaned the Partnership the sum of $25 million and, in consideration thereof, the Partnership executed and delivered to Travelers a promissory note dated as of that date, in the principal amount of $25 million bearing interest at the rate of 11¾% per annum until paid. To secure payment of the obligations represented by the note, the Partnership granted to Travelers, among other security devices, a mortgage on the Building and a Collateral Assignment of Leases, pursuant to which the Partnership assigned to Travelers, at least, the rents to be paid on all leases for space in the Building including the First Lease. This loan, and accompanying mortgage, made Travelers the Institutional Mortgagee referenced in the First Lease.

On May 1, 1987, LEI entered into a Second Lease by which LEI leased from the Partnership 1,800 square feet located on the seventh floor of the Building, and adjacent to the space leased by LEI in the First Lease. This Second Lease was subject to the Collateral Assignment of Leases. The form of the Second Lease is identical to that of the First Lease.

The Partnership failed to meet its obligation to pay timely the installment due on its indebtedness to Travelers for the month of March, 1990 and the installments due for each month thereafter. In June, 1990, Travelers filed a lawsuit against the Partnership and other defendants seeking, among other things, the seizure and sale by judicial process of the Building. The Building was sold at public auction of October 18, 1991 to Travelers, the sole bidder.

Section 20(g) of the First and Second Leases provides as follows:

[I]n the event of the termination of this Lease or of any succeeding lease made pursuant to the provisions of this clause prior to the expiration date, Lessee will enter into a new lease of the Leased Premises with the Institutional Mortgagee for the remainder of the term of this Lease, effective as of the date of such termination, at the rent and additional rent and upon the covenants, agreements, terms, provisions and limitations herein contained provided such Institutional Mortgagee makes written request upon the Lessee for such new lease within thirty (30) days from the date of such termination.

Acting pursuant to these provisions, Travelers delivered to LEI two proposed leases on November 15, 1991. These two leases, respectively, matched the First and Second Leases which terminated upon the sale of the Building at public auction, ex-

cept that the dates of execution were changed, Travelers was substituted for the Partnership as Lessor and the leases were executed by James Morgan, an officer of Travelers.

LEI has since refused to sign the proposed leases and has failed to pay any of the rental due under the proposed leases.

By this motion, Travelers seeks summary judgment declaring the two proposed leases valid and enforceable by Travelers and awarding Travelers all rentals due from the date the proposed leases were executed through the end of their respective terms. Travelers claims to be entitled to the entire amount of rents due under the contract pursuant to an acceleration clause found in Section 22 of the leases.

### ANALYSIS

Summary judgment shall be granted when, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The lease contracts are to be given legal effect according to the parties' true intent, which must be determined by the words of the contract where they are clear, explicit and lead to no absurd consequences. *Ransom v. Camcraft, Inc.*, 580 So.2d 1073, 1076 (La.App. 4th Cir.1991). The disposition of this motion depends upon the interpretation of three clauses of the First and Second Leases and their successors, tendered by Travelers to LEI. First, Travelers rights, as "Institutional Mortgagee," are governed by Section 20 of the leases; that Section must be interpreted to determine the validity of Travelers tendered leases. Second, Travelers right to acceleration of the rents under the leases depends on interpretation of Section 22 of the leases. Finally, the parties are at odds as to the term of the second proposed lease—also a matter of contract interpretation. "As long as the contract as a whole is coherent, ambiguities can be resolved as a matter of law without looking beyond the four corners of the document." *Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 651 (5th Cir.1989).

### *Validity of Travelers' Tendered Leases*

■ LEI contends that Travelers status as Institutional Mortgagee was extinguished along with its mortgage by operation of the judicial sale of the Building on October 18, 1991. Section 20 of the leases, which governs the rights of the Institutional Mortgagee, however, specifically provides for the event of a foreclosure by the Institutional Mortgagee. Sub-sections (f) and (g) provide as follows:

> (f) any Institutional Mortgagee or third person purchaser at a foreclosure sale may become the legal owner and holder of this Lease by foreclosure of the Institutional Mortgage or as a result of the assignment of this lease in lieu of foreclosure, whereupon such Institutional Mortgagee or third person purchaser shall immediately become and remain liable under this lease except that, as to accrued amounts payable by Lessor to Lessee under this Lease as of such date, the Lessee shall have no recourse against the Institutional Mortgagee; and

> (g) in the event of the termination of this Lease or of any succeeding lease made pursuant to the provisions of this clause prior to the expiration date, Lessee will enter into a new lease of the Leased Premises with the Institutional Mortgagee for the remainder of the term of this Lease, effective as of the date of such termination, at the rent and additional rent and upon the covenants, agreements, terms, provisions and limitations herein contained provided such Institutional Mortgagee makes written request upon the Lessee for such new lease within thirty (30) days from the date of such termination.

The conjunction joining the two sub-sections combines the right of the Institutional Mortgagee to "become the legal owner and holder of this Lease by foreclosure of the Institutional Mortgage" with the further right to compel the lessee to enter into new

leases after such a termination of the old lease.

It is just such a procedure that Travelers utilized to continue into effect the First and Second Leases. Where the contract spells out specifically what the Institutional Mortgagee must do following a foreclosure of its mortgage, it cannot be said that the foreclosure extinguishes the Institutional Mortgagee's rights beyond that event.

LEI next contends that the parties to the First and Second Leases did not intend to stipulate such a benefit for a third person. LEI's basis for this assertion is that Travelers did not hold its mortgage on the Building at the time the First Lease was made. It cannot be disputed that the lease intends to provide benefits to some third party—an unnamed Institutional Mortgagee. The relevant consideration, however, is whether the third party beneficiary can be determined on the date it is to receive the benefit. *Andrepont v. Acadia Drilling Co.,* 255 La. 347, 231 So.2d 347, 352 (1969). Travelers was identifiable well in advance of its exercise of the rights stipulated to it by the leases. Defendant further argues that Travelers failed to manifest its intention to avail itself of the stipulated benefit as is required by La. Civil Code Art.1978. Here, the lease provides that the mechanism by which Travelers is to avail itself of the benefit of issuing new leases to LEI is to tender such leases within thirty days of the termination of the old leases. By doing just that, Travelers sufficiently manifested its intention to avail itself of the benefit before the benefit could possibly be withdrawn.

Having determined that Travelers, as Institutional Mortgagee, was entitled under both the First and Second Leases to compel LEI to "enter into a new lease of the Leased Premises with the Institutional Mortgagee for the remainder of the term of [the old leases]," the new leases became effective as of the date of termination of the old leases. Travelers' tender of such new leases on November 15, 1991 effectively continued into effect in its name the leases previously entered into between the Partnership and LEI through the end of their terms.[1]

This Court finds, therefore, that the two leases tendered by Travelers to LEI on November 15, 1991 are valid leases and are enforceable by Travelers against LEI.

*Application of the Acceleration Clause*

■ Turning to the manner in which Travelers may enforce the leases, Travelers has requested payment of all unexpired rent payable under the leases, on an accelerated basis. The lease provision allowing acceleration of the rents is found at subsection (g) of Section 22. Section 22 provides:

**22. The following shall, at Lessor's option, constitute a default by Lessee under the terms of this Lease:**

(b) Failure by Lessee to pay the rent provided herein or any other payment required herein to be made by Lessee hereunder or any part thereof, which default shall continue after ten (10) days written notice thereof by Lessor to Lessee;

(g) Any reduction, revocation or suspension of Lessee's active medical staff membership and or clinical privileges at St. Jude Hospital of Kenner, La., Inc. (hereinafter referred to as "Hospital"); or, if Lessee is a professional corporation, the reduction, revocation or suspension of the active medical staff membership and/or clinical privileges at Hospital of any physician employee, agent, or shareholder of Lessee. All physicians employed by or holding stock in Lessee shall be members of the active medical staff of Hospital. For the purpose of this Lease, a reduction, revocation or suspension of active medical membership or clinical privileges shall be deemed to have occurred when the physician in-

---

**1.** Defendant asserts that Travelers did not tender leases in compliance with Section 20(g) because the leases tendered by Travelers carried the same effective date as the original leases instead of October 18, 1991, the date those original leases terminated. Nowhere do the lease provisions state that the tendered leases should begin anew from the date of termination. Section 20(g) merely calls for a continuation of the effectiveness of the new leases from the time the original leases left off.

volved had either (1) failed to request a hearing by the judicial review committee of Hospital pursuant to Hospital's Medical Staff Bylaws and Rules and Regulations, or (2) received an adverse final decision by the Board of Directors or suspension of his or her active medical membership or clinical privileges. In said events or any of them, Lessor may, at Lessor's option, without any notice or putting in default, (1) proceed for past due installments of rent only, reserving its right to proceed later for the remaining installments; or (2) declare all of the unpaid installments of rent at once due and exigible, and the whole thereof shall become and be immediately due and payable anything herein to the contrary notwithstanding, and to proceed to enforce its legal remedies hereunder, or (3) cancel this Lease, and immediately expel Lessee, without, however, waiving Lessor's right to collect all installments of rent and all other payments due or owing for the period up to the time Lessor regains occupancy, including costs, attorney fees, and for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation and the date of taking under this paragraph shall then be deemed the date agreed to under the terms of said agreement or stipulation.

It is the contention of defendant that acceleration of rents applies only where the default relied on by Lessor is that set forth in the beginning of sub-section (g), i.e. reduction, revocation or suspension of active medical membership or clinical privileges at St. Jude Hospital, in that the acceleration clause immediately follows this provision. A reading of the acceleration clause shows, however, that it is not restricted to subsection (g). Lessor is given the option of proceeding for "past due installments of rent only ... or (2) declare all of the unpaid installments of rent at once due and exigible ..." Contemplating the event of past due payments, which is defined as a default in subsection (b), the acceleration clause is clearly intended to have effect beyond the potential loss of staff privileges.[2]

The acceleration clause is therefore available as a remedy to the lessor for any of the events of default listed in Section 22.

*Term of the Second Lease*

■ Travelers calculated its damages on the basis of a ten year term applying to the Second Lease, as adopted in the tendered second lease. The term of the original Second Lease was stated in Section 1(A)(5) as follows:

The term of this Lease shall be Ten (10) years,

commencing on the 1st day of May, 1987,

(Commencement Date) and ending on the 30th day of

April, 1992, unless sooner terminated as herein

provided.

Section 1(A)(6) further provides:

Basic Annual Rent: 27,000.00

Lease Years: 1987, 1988, 1989, 1990, 1991, 1992

Basic Monthly Rental: $2,250.00

There obviously exists a discrepancy as to the ending date of the lease. The stated term of "Ten (10) years" coincides with neither the ending date of April 10, 1992 or the listing of Lease Years in Section 1(A)(6).

Given the parties' endeavor to specify an ending date and to list the specific years to which the lease would apply, both of which are in agreement, the Court determines that the lease term was intended to run through April 30, 1992, or five years.[3]

2. Furthermore, Louisiana law provides that a lessor is given the option set forth in 22(g) simply by operation of law, without regard for contractual provisions. See e.g. *Shreveport Plaza Association Limited Partnership v. L.R. Resources, II*, 557 So.2d 1067, 1071 (La.App.2d Cir. 1990).

3. This interpretation is further supported by the letter of tenant estoppel executed and submitted by LEI to Travelers on May 1, 1987, the same day as the execution of the Second Lease. That letter also provides that the Lease terminates on April 30, 1992. Travelers Reply Memorandum, Exhibit 2.

**646**

### COMPUTATION OF RENT

In support of its motion, Travelers filed the affidavit of Ralph Dazet, a certified public accountant. Mr. Dazet testified that he had analyzed the leases at issue and had computed the total rents due under the leases. The defendant's only objection to the computations of Mr. Dazet related to the effective date of the tendered leases, which this Court, as stated above, has found to be correct as applied in the computations. An adjustment must be made in Mr. Dazet's computations, however, as to the length of the second lease. This Court found the second lease to have been for a term of five years, not ten years as applied by Mr. Dazet in his computations. Therefore, the Court finds the total rents due under the first lease to be $732,603.81, and the total rents due under the second lease to be $13,483.14, for a combined total of $746,086.95.

### CONCLUSION

Based on the foregoing interpretations of the lease contracts, this Court finds that Travelers is entitled to an award of accelerated lease payments from LEI under the two leases it has tendered to LEI as computed above.

Accordingly,

IT IS ORDERED that:

1. Plaintiff's, Travelers Insurance Company's, Motion for Summary Judgment is GRANTED;

2. A judgment be entered in favor of plaintiff, Travelers Insurance Company, and against the defendant, Liljeberg Enterprises, Inc., for total rent payments due under the leases in the amount of $746,086.95, together with legal interest from the date of judgment. All costs of these proceedings are to be borne by the defendant.