UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 93-3832
_____

TRAVELERS INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

LILJEBERG ENTERPRISES, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
(CA-92-58-I)
_____


**************************************************************


_____

No. 93-3833
_____

TRAVELERS INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

ST. JUDE HOSPITAL, OF KENNER, LOUISIANA, INC., ET AL.,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Eastern District of Louisiana
(CA-90-1983-I c/w 90-2601-I)
_____

```
**************************************************************
```

_____

**No. 93-3891**

_____

**TRAVELERS INSURANCE COMPANY,**

**Plaintiff-Appellee,**

**VERSUS**

**ST. JUDE HOSPITAL OF KENNER, LOUISIANA, INC.,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Eastern District of Louisiana
(CA-93-173-I)**
_____

**(November 21, 1994)**

Before HIGGINBOTHAM, JONES, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue in these three related actions are the use of belated and extremely intemperate post-judgment motions, filed pursuant to Fed. R. Civ. P. 60(b)(6), seeking, primarily because of the trial judge's club memberships and other social contacts, to disqualify him under 28 U.S.C. § 455(a) (judge's "impartiality might reasonably be questioned"), and, therefore, to set aside the adverse judgments. The district court denied the motions as being untimely, and, alternatively, without merit. We **AFFIRM** and impose sanctions.

I.

Once again, this court has before it another of the continuing disputes between the Liljebergs and Travelers Insurance Company. The background to the three actions before us was developed in our earlier decisions in *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203 (5th Cir. 1993), *aff'g in part* 799 F. Supp. 641 (E.D. La. 1992); *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 21 F.3d 1107 (5th Cir. 1994) (No. 92-9579; unpublished); and *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, No. 93-3731, slip op. 581 (5th Cir. Oct. 25, 1994). We develop the time line only as necessary to clarify and focus the common issue in these three related appeals.

A.

In June 1990, Travelers filed suit against the St. Jude Medical Office Building Limited Partnership (Partnership) and other defendants seeking, *inter alia*, the seizure and judicial sale of the St. Jude Medical Office Building (Partnership Litigation).[1]

---

[1] In addition to the Partnership, other defendants were St. Jude Hospital of Kenner, Louisiana, Inc. (SJH); Liljeberg Enterprises, Inc. (LEI); Krown Drugs, Inc. (Krown); John A. Liljeberg, Jr.; and Robert Liljeberg. SJH, Krown, and LEI are related entities, each formed, owned and controlled by the Liljebergs. Accordingly, references in this opinion to the Liljebergs include not only John and Robert Liljeberg, but also their entities.

Together with the seizure and sale of the building, Travelers also sought: unpaid rents from tenants Krown and LEI under their respective leases; joint liability of the Partnership for the unpaid rents of affiliates Krown and LEI due to the Partnership's consistent misrepresentations of timely collection of their rents; compensation for the destruction of improvements; the seizure and sale of movables surreptitiously removed from the building; and reimbursement for the cost of installing another storm and sewerage system in response to the Liljebergs' threats to block the existing

- 3 -

Following a jury trial, an amended judgment for Travelers was entered in December 1992; the Liljebergs appealed. On October 1, 1993, while the appeal was pending, the Liljebergs moved under Rule 60(b)(6) to have the judgment vacated,[2] claiming that, primarily because of his social contacts, United States District Judge Henry A. Mentz, Jr., violated 28 U.S.C. § 455(a) by failing to disqualify himself from the action although he knew, or should have known, that his impartiality might reasonably be questioned. The denial of the motion was appealed (No. 93-3833). As for the earlier appeal of the underlying judgment, our court affirmed the Liljebergs' liability on April 20, 1994; the determination of prejudgment interest was reversed and remanded. *Travelers*, 21 F.3d 1107 (unpublished).

### B.

On August 13, 1992, in a related action, summary judgment was awarded Travelers to enforce two leases against Liljeberg Enterprises, Inc. (LEI Litigation). *Travelers*, 799 F. Supp. 641. LEI appealed; and, as in the Partnership Litigation, it filed the same 60(b)(6) motion on October 1, 1993, which the district court denied. Following that denial, but before LEI filed this appeal

---

one.

[2]    Fed. R. Civ. P. 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment.

(No. 93-3832), our court affirmed the underlying summary judgment. ***Travelers***, 7 F.3d 1203.

## C.

When Travelers was unsuccessful in its efforts to collect the Partnership Litigation judgment, it sued the general partner, St. Jude Hospital of Kenner, Louisiana, Inc. (SJH Litigation). On July 30, 1993, summary judgment was awarded Travelers; and, SJH appealed the denial of its *res judicata* claim. Unlike the first two actions, SJH waited until November 2, 1993, to file essentially the same 60(b)(6) motion. *See* notes 4-5, *infra*. It appealed the denial (No. 93-3891). We recently affirmed the underlying summary judgment. ***Travelers***, No. 93-3731, slip op. 581.

## II.

At issue for all three appeals from the denials of the Rule 60(b)(6) motions is whether the district judge abused his discretion in refusing, post-judgment, to recuse himself pursuant to § 455(a).[3] That section provides in relevant part: "Any ...

---

[3] Although all three 60(b)(6) motions were filed while appeals from the underlying judgments were pending, the district court had jurisdiction to consider the motions. Generally, when an appeal is taken, the district court is divested of jurisdiction except to take action in aid of the appeal until the case is remanded to it by the appellate court, or to correct clerical errors under Rule 60(a). 7 James W. Moore et al., Moore's Federal Practice, ¶ 60.30[2]. Our court recognizes, however,

> the power of the district court to consider on the merits and deny a 60(b) motion filed after a notice of appeal, because the district court's action is in furtherance of the appeal. When the district court is inclined to grant the 60(b) motion, however, then it is necessary to obtain the leave of the court of appeals. Without obtaining leave, the district court is without jurisdiction, and

judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A party seeking such disqualification "must show that, if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality." *Matter of Billedeaux*, 972 F.2d 104, 105 (5th Cir. 1992) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982) (citations omitted), *cert. denied*, 464 U.S. 814 (1983)).

Although § 455 does not speak to vacating a judgment, Rule 60(b)(6), in conjunction with § 455, does provide "a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). But, it goes without saying that a Rule 60 motion is not a substitute for an appeal from the underlying judgment. Accordingly, denial of a 60(b)(6) motion is reviewed only for abuse of discretion.[4] *E.g.*, *Williams v. Brown & Root, Inc.*, 828 F.2d

_____

cannot grant the motion.

*Willie v. Continental Oil Co.*, 746 F.2d 1041, 1046 (5th Cir. 1984) (citations omitted), *vacated*, 760 F.2d 87 (5th Cir. 1985), *rev'd on other grounds*, 784 F.2d 706 (5th Cir. 1986) (en banc); *accord* *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 932 (5th Cir. 1976).

[4] In addition to the 60(b)(6) motions, the Liljebergs filed motions seeking to amend (expand) the statement of facts in the first two cases; the disqualification of Judge Mentz from considering the 60(b)(6) motions; and an evidentiary hearing. As with a 60(b)(6) motion, the district court is given broad discretion in ruling on these motions, and will be affirmed absent an abuse of that discretion. *E.g.*, *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993). *See* note 17, *infra*.

325, 328 (5th Cir. 1987). Therefore, "[i]t is not enough that the granting of relief might have been permissible, or even warranted -- denial must have been so *unwarranted* as to constitute an abuse of discretion." ***Seven Elves, Inc. v. Eskenazi***, 635 F.2d 396, 402 (5th Cir. 1981).

The lengthy, unsworn, and extremely intemperate (if not contemptuous) recitation of "facts" in support of the 60(b)(6) motions boils down primarily to assailing the judge's social contacts; essentially, that several attorneys from two law firms representing Travelers (to include the one representing it in these actions), as well as a director of its parent company, are members, with Judge Mentz, of The Boston Club of New Orleans.[5] These

---

[5] The club is described by the Liljebergs as "an exclusive private club", which "has a reputation in the New Orleans area community as an elitist social clique". Whether the Boston Club is a "private club" under Chapter 40C of the City Code of New Orleans is at issue before our court in ***Louisiana Debating and Literary Assoc. v. City of New Orleans***, No. 94-30180 (5th Cir. argued Nov. 1, 1994).

Other social ties of Judge Mentz which the Liljebergs assail include: membership in a "most secretive and exclusive carnival organization"; membership in Le Debut, a "private social club which selects and presents debutantes for introduction into New Orleans elite society"; membership in the Royal Society of St. George, which the Liljebergs contend "practices discrimination in the selection of ordinary members on the basis of national origin-an ordinary member must be of English birth or descent"; inclusion in The Social Directory of New Orleans, which lists an "aristocracy of merit" and includes "active and distinguished members of the social scene and/or members of old line families"; familial relationship to the director of Travelers' parent company (the brother of the judge's son-in-law (now, former, *see* note 12, *infra*) is married to the director's daughter); and his wife's and daughter's membership, together with wives of members of the two law firms, in an "exclusive private club for women", The Orleans Club, whose purpose is "`to associate into closer bonds of unity' women whose interests comprise the social, professional and financial affairs of New Orleans".

- 7 -

contacts supposedly create a situation in which a reasonable person would question the judge's impartiality, mandating disqualification and vacation of the judgments.[6]

---

Each of the two 60(b)(6) motions filed on October 1 included an unsworn 104 paragraph statement of material facts in support. One month later, when the Liljebergs sought to disqualify Judge Mentz from considering those motions and also filed the 60(b)(6) motion for the third action, their allegations ballooned into over 160 paragraphs. As noted, most of these "facts" fall in the category of intemperate accusations, inapposite references, and innuendos. For example, the Liljebergs describe at length the legal fees that Travelers paid to the two law firms during the years 1990-1993, and how these fees ranked when compared to the total legal fees paid by Travelers for each year. As another example, when the "facts" expanded to 166 paragraphs, the Liljebergs listed various people, including Judge Mentz, who were listed in The Social Directory of New Orleans.

The Liljebergs further attack Judge Mentz in the motions, claiming that while the cases were before his court, Judge Mentz "sought appointment to" this court, and that two of the partners of the law firm representing Travelers "had a reputation in the New Orleans area community as being ... influential Republican Party patron[s] who had significant contact with party officials responsible for making recommendations for federal appointments." The Liljebergs then intimate improper actions on the part of Judge Mentz and one of those two partners by claiming that, during a recess in the Partnership Litigation, the lawyer (then the United States Attorney) "visited privately with [Judge Mentz] in the court's chambers."

[6] Because we are reviewing the denials of Rule 60(b)(6) motions for abuse of discretion, we do not reach the § 455(a) merits as we would on a direct appeal from a judgment. This notwithstanding, it appears that the reasons given for disqualification are totally without merit; indeed, they are almost laughable. What is not humorous is the attack on the district court and the great waste of judicial time and resources, not to mention the cost to Travelers, caused by the 60(b)(6) motions and these appeals. The allegations speak volumes about the apparent vendetta engaged in by the Liljebergs, and their attorney, Kenneth C. Fonte, against Judge Mentz. This is best exemplified by the recent release of a song, on compact disc, written and performed by Mr. Fonte, entitled "King Henry"; it is nothing more than a personal and extremely unprofessional attack on Judge Mentz. (Shortly before oral argument in late August 1994, Travelers moved that we take judicial notice of this song; in opposition, Mr. Fonte admitted that it was written and recorded in May 1994. The motion was carried with the

The Liljebergs contend that they did not have any knowledge of the club membership until July 23, 1993, almost a year after the first two judgments and one week before the third (SJH

case; obviously, it is **GRANTED**.)

For example, the song states that Judge Mentz "grants favors to his friends in the social scene"; is "a slave to aristocracy"; will "lift the blindfold of justice [f]or fraternal fantasy"; and "believes that the Constitution [m]ust yield to noblesse oblige". No doubt, some of the lyrics are fairly clever. At best, they are biting satire. But, they were not written by a folksinger or balladeer. They were penned by a lawyer, an officer of the very court being ridiculed, who had been unsuccessful repeatedly in these actions in that court.

Contending that the song "expressly concerns criticism of official conduct of an officer of the federal government", Mr. Fonte claims protection under the First Amendment. Without addressing his contention, we remind him that "once a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct." *United States Dist. Court v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993). He should also note that

> [t]he Louisiana Supreme Court recently approved the Code of Professionalism. Article 7 of that Code continues to emphasize that an attorney "should not engage in personal attacks on other counsel *or the court*." A lawyer's conduct should be characterized *at all times* by personal courtesy and professional integrity embodied in this Code.

*Fox v. LAM*, 632 So. 2d 877, 879 (La. App. 2d 1994) (emphasis added).

That a lawyer, an officer of the court, would stoop to this sort of conduct reflects a gross lack of understanding of professional conduct and the role that lawyers should play in assisting to uphold the dignity of the courts. To engage in heaping such ridicule on a federal judge undermines the position that the federal courts must hold in our system of government; the object harmed is not the judge, but the very system of justice on which the attorney and his clients depend. It is a sad day indeed when a lawyer's concept of his role and duty as a lawyer and officer of the court is so misguided. Mr. Fonte has stepped far, far beyond the pale.

- 9 -

Litigation).[7]  This contention, however, was unsupported by an affidavit or other evidentiary basis.[8]  Upon discovery of these circumstances, the Liljebergs never mentioned their concern to Judge Mentz or to Travelers.  Instead, they sat passively while Judge Mentz entered judgment in the third case.[9]  Only after being

---

[7]     In denying the motions, Judge Mentz stated that he had disclosed his membership in the Boston Club during his confirmation process (he was appointed in 1982), and had listed it since 1984 in the **Almanac of the Federal Judiciary**.  Although the Liljebergs characterize this publication as "esoteric" and as one "more likely than not most lawyers have never heard of ... and fewer still have bothered to peruse", another court has described it as "a publication widely circulated to the bench and bar".  *Standing Comm. on Discipline of the United States Dist. Court for the Cent. Dist. of Cal. v. Yagman*, 856 F. Supp. 1395, 1397 (C.D. Cal. 1994).

[8]     Unlike 28 U.S.C. § 144 (requiring an affidavit when seeking recusal based on bias or prejudice), an affidavit is not required to seek disqualification under § 455.  Nevertheless, we are still troubled that certain parties may abuse § 455 for a dilatory and litigious purpose based on little or no substantiated basis. *See* *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir.) ("Congress did not enact § 455(a) to allow counsel to make a game of the federal judiciary's ethical obligations; we should seek to preserve the integrity of the statute by discouraging bad faith manipulation of its rules for litigious advantage."), *cert. denied*, 459 U.S. 839 (1982).

On the other hand, in making the 60(b)(6) motions, and concerning the key issue of timeliness, the Liljebergs were obviously required, but failed, to support their motions with affidavits or other sworn proof that they did not know of Judge Mentz's club membership prior to July 23, 1993.  *E.g.*, *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir.) (a party is required, with affidavits, to support a 60(b) motion to vacate an arbitration award when it claims a lack of prior knowledge of a former relationship between an adversary and an arbitrator; the party must negate any inference that it had implicitly consented to go before the arbitrator knowing all it now knows but saying nothing), *cert. denied*, 464 U.S. 1009 (1983).

[9]     The Liljebergs maintain that upon learning of the club memberships, their counsel "commenced an investigation of the social ties among those persons to determine whether Judge Mentz had violated 28 U.S.C. § 455(a)."  In addition, they "commissioned and secured the performance of a sociological study to objectively

unsuccessful in that case did they seek recusal in all three.  The district court denied the motions on two alternate grounds: untimely, and without merit.  We address each basis.

A.

The first issue is whether the motions were untimely.  Rule 60(b)(6) empowers federal courts with broad authority to relieve a party from a final judgment. *Liljeberg*, 486 U.S. at 863; *Klapprott v. United States*, 335 U.S. 601, 613 (1949).  Moreover, a 60(b)(6) motion is not subject to the one year limitation imposed upon subparts (1) through (3).  Instead, a party seeking 60(b)(6) relief must file the motion within a "reasonable time", *Liljeberg*, 486 U.S. at 863, which depends upon the particular facts and circumstances of the case.  *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992); *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) ("What constitutes `reasonable time' depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties").

Because the Liljebergs rely upon § 455(a) for invoking Rule 60(b)(6), we consider also § 455(a)'s requirements in determining whether the motions were timely.  *See Goldfine v. United States*, 326 F.2d 456, 457-58 (1st Cir. 1964) (a litigant who seeks a 60(b)

---

evaluate public perception of the appearance of impropriety associated with the exclusive private club membership" of Judge Mentz and other New Orleans attorneys.  Needless to say, without commenting on the propriety *vel non* of such a poll, this is not the legal standard by which a § 455(a) disqualification is judged.

vacation based on lack of notice must act within the period he would have had to have originally acted upon receiving actual notice).  Our court has recognized that a timeliness requirement applies to raising § 455(a) disqualification.  *Delesdernier*, 666 F.2d at 121-23.  Furthermore, it is well-settled that -- for obvious reasons -- one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.  *Id.* at 121 n.3; *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976), *cert. denied*, 430 U.S. 931 (1977); *Marcus v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 548 F.2d 1044, 1051 n.21 (D.C. Cir. 1976) (citing cases stating the general rule that one must raise the issue of disqualification of the trier, whether judge, administrator, or arbitrator, at the earliest practicable moment after relevant facts become known).

The district court did not abuse its discretion in rejecting all three motions as untimely.  As noted, upon allegedly discovering on July 23, 1993, the primary basis for their motions, the Liljebergs failed to mention their concern to the judge or to Travelers.  In fact, they not only waited until Judge Mentz entered judgment in the third case (SJH Litigation), but delayed even longer.  In the SJH Litigation, after the district court entered judgment on July 30, the Liljebergs (specifically, SJH) on August 9, 1993, moved for a new trial or to alter the judgment, which they subsequently supplemented with another motion to vacate judgment.  They alleged, *inter alia*, that Judge Mentz's law clerk and

Travelers' counsel made "false statement[s] of material fact to the court", intentionally misled the court in violation of the Rules of Professional Conduct, and otherwise committed "ill practices". In light of the unrestrained accusations and innuendos we have seen in these actions, these charges simply reinforce the perception of the reckless attacks in which the Liljebergs and their counsel have engaged.

With those post-judgment motions, the Liljebergs dragged out the third case until the end of September. While the motions were pending, the Liljebergs failed to raise disqualification. Only after the district court denied the motions at the end of September did the Liljebergs commence their next salvo -- the 60(b)(6) motions. They waited until October 1, 1993 (nearly a year after entry of the judgments in the first two cases), before filing their motions in the first two cases;[10] in the third, they waited yet another month.[11]

Obviously, the delay in the third case cannot be countenanced. As of the alleged first date of knowledge of club membership, the judgment in that case had not been entered. (As noted, it was entered one week later.) As discussed, a party feeling there is a basis for disqualification must make that known to the court at the earliest possible moment. Moreover, as noted, a § 455(a) recusal

---

[10] The original judgment in the Partnership Litigation was entered on August 18, 1992, and amended on December 3, 1992; in the LEI Litigation, judgment was entered on August 18, 1992.

[11] The judgment in the SJH Litigation was entered on July 30, 1993. The 60(b)(6) motion was filed on November 2, 1993.

is self-executing, *see* note 8, *supra*; no affidavit (or in this case, "opinion poll") is necessary to present the claimed basis for disqualification to the court.

Had the Liljebergs acted promptly, the district judge could have considered disqualification before entering judgment on the pending summary judgment motion in the third case. As our court has observed, "[i]f disqualification may be raised at any time, a lawyer is then encouraged to delay making a § 455(a) motion as long as possible if he believes that there is any chance that he will win at trial. If he loses, he can always claim the judge was disqualified and get a new trial." *Delesdernier*, 666 F.2d at 121.

As for the first two cases, it is certainly reasonable to suspect that the delay in filing the motions in those cases was also for the purpose of hoping not to impede a favorable decision in the third. Therefore, the delay in seeking recusal in the third action colors that for the first two. Had the recusal motions in all three actions been filed promptly after the alleged first date of knowledge of club membership, this might have assisted the district judge in determining recusal in the third case, for which judgment had not been entered. Accordingly, we will not separate the timeliness issue for the first two cases from the third. To do so would simply reward the Liljebergs for waiting on the result in the third case before seeking recusal in the first two.[12]

---

[12] While these appeals were pending, the Liljebergs moved, in the alternative, to remand to the district court so that additional material could be added to the record (affidavit of recently divorced former son-in-law of Judge Mentz; the contemporaneous motion to supplement the record on appeal was denied when filed.)

B.

The 60(b)(6) motions were denied properly for being untimely. In the alternative, even assuming *arguendo* a § 455 violation, the denial of the motions was not an abuse of discretion.[13]

> Rule 60(b)(6) relief is ... neither categorically available nor categorically unavailable for all § 455(a) violations. We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

---

Obviously, in light of our holding that the 60(b)(6) motions were untimely, the motion to remand is **DENIED**.

[13] We emphasize that, for purposes of this section, in order to determine whether there was an abuse of discretion in denying the 60(b)(6) motions, a § 455 violation is only assumed. It should be noted, however, that the Liljebergs do not cite, nor can we find, any case addressing disqualification because of membership in a private, social club (as discussed, this is the classification given the club by the Liljebergs), to include when members of a law firm representing one of the parties also hold such membership. In addition, we are reminded that

> [i]n today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts therefore have held that a judge need not disqualify himself just because a friend -- even a close friend -- appears as a lawyer.

*United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985), *cert. denied*, 475 U.S. 1012 (1986).

*Liljeberg*, 486 U.S. at 864; *accord* **In re Continental Airlines Corp.**, 901 F.2d 1259, 1263 (5th Cir. 1990) ("the `harmless error' rule applies to a breach of a judge's duty to stand recused under § 455(a)"), *cert. denied*, ___ U.S. ___, 113 S. Ct. 87 (1992).

First, in all three cases, the denial of the 60(b)(6) motions threaten the Liljebergs with a minimal risk of prejudice.  In the Partnership Litigation, a jury, not the district judge, considered the facts and evaluated the credibility of the witnesses. It determined the Liljebergs' liability, which we affirmed, **Travelers**, 21 F.3d 1107 (unpublished).  The Liljebergs fail to demonstrate, nor do we find, any injustice which would warrant vacating the jury's verdict.  In the LEI and SJH Litigations, the sole issue was one of law.[14]  The Liljebergs sought review of those judgments; in both instances, we affirmed through *de novo* review.  **Travelers**, 7 F.3d 1203 (affirming the summary judgment in the LEI Litigation); **Travelers**, No. 93-3731, slip op. 581 (affirming the summary judgment in the SJH Litigation).  Again, the Liljebergs suffered no injustice.  **Continental Airlines**, 901 F.2d at 1263 ("The risk of injustice to the parties in allowing a summary judgment ruling to stand is usually slight").

On the other hand, Travelers faces a great risk of injustice should the judgments be vacated.  During its dealings with the Liljebergs, Travelers has encountered what another panel of this

---

[14]    At issue in the LEI Litigation was whether LEI and Krown were obligated to enter into leases with Travelers; in the SJH Litigation, whether *res judicata* prevented Travelers from seeking payment from SJH on the judgment against its partnership.

- 16 -

court described as the most "egregious and unconscionable course of bad faith contractual dealings as the members of this panel can recall having encountered." *Travelers*, 21 F.3d 1107 (unpublished), No. 92-9579, slip op. at 2. Having obtained judgments against the Liljebergs, it would be a travesty of justice -- to say the least -- to require Travelers to start over. Besides, as noted, absent a showing of a material effect on the jury verdict in the Partnership Litigation, the results would be the same, especially in light of our *de novo* affirmance of the LEI and SJH Litigations.

Second, the denial of relief does not produce injustice in other cases. In fact, the Liljebergs fail to identify any.

And third, we find no risk that the public's confidence in the judicial process will be undermined. Partiality for or against an attorney, who is not a party, is not enough to require disqualification unless it can be shown that such a controversy would demonstrate bias for or against the party itself. *See Henderson v. Department of Public Safety and Corrections*, 901 F.2d 1288 (5th Cir. 1990);[15] *Davis v. Board of School Comm'rs of Mobile County*, 517 F.2d 1044, 1051-52 (5th Cir. 1975), *cert. denied*, 425

---

[15]    *Henderson* provides a close analogy to the Liljebergs' § 455(a) contention. A party alleged that the trial judge was required to recuse himself because, *inter alia*, "the judge presiding over this case ... has known the opposing counsel since he was a kid and that the judge presiding over this case was friends of opposing counsel and opposing counsel's father ...." *Henderson*, 901 F.2d at 1295. We recognized that these circumstances did not require disqualification under § 455 and that "even the most superficial research would have put [counsel] on notice that the factual circumstances he alleged were not grounds for recusal .... The trial judge was well within his discretion in finding that the motion for recusal was not well founded, either in fact or in law." *Id.* at 1296.

U.S. 944 (1976).[16]  *See also* **Delesdernier**, 666 F.2d at 121 ("... it might legitimately be asked whether the spectacle of an attorney dragging his opponent through a long and costly proceeding, only to conclude by moving for disqualification of the judge, is not equally detrimental to public impressions of the judicial system").[17]

### C.

Contending that these appeals are frivolous, Travelers seeks sanctions against the Liljebergs.[18]  A frivolous appeal is one which

---

[16]    *See also, e.g.,* **Chitimacha Tribe of La.**, 690 F.2d 1157 (judge not required to recuse himself where some defendants were related to members of the judge's former law firm); **Parrish v. Board of Comm'rs of Ala. State Bar**, 524 F.2d 98 (5th Cir. 1975) (en banc) (fact that judge had acquaintanceship or friendship with some defendants, witnesses, and defense counsel did not require recusal), *cert. denied*, 425 U.S. 944 (1976); **Warner v. Global Natural Resources PLC**, 545 F. Supp. 1298 (S.D. Ohio 1982) (judge not required to recuse himself due to acquaintanceship between plaintiff and judge, and fact that plaintiff had supported judge's nomination to the bench).

[17]    The denials of the Liljeberg's other motions, which are raised as issues here, *see* note 4, *supra*, do not constitute an abuse of discretion.

[18]    The Liljebergs challenge the district court's award of costs, expenses and attorneys' fees.  The district court imposed these sanctions under 28 U.S.C. § 1927, which, pursuant to its plain terms, applies only to attorneys, not the parties in the litigation. **Browning v. Kramer**, 931 F.2d 340, 344 (5th Cir. 1991). Thus, the sanctions were not imposed against the Liljebergs. Additionally, the district court's order only imposed sanctions; it did not quantify the amount.  Therefore, even if the Liljebergs were liable, this court would lack jurisdiction because the award of attorneys' fees, without an amount certain, is not a final order. **Southern Travel Club, Inc. v. Carnival Air Lines, Inc.**, 986 F.2d 125, 131 (5th Cir. 1993) ("an order awarding attorney's fees or costs is not reviewable on appeal until the award is reduced to a sum certain").  While these appeals were pending, the district court, in the Partnership Litigation, quantified § 1927 sanctions against the Liljebergs' attorney.  This quantification is the subject of **Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La.,**

"involves legal points not arguable on their merits." *Olympia Co. v. Celotex Corp.*, 771 F.2d 888, 893 (5th Cir. 1985) (quoting *Hagerty v. Succession of Clement*, 749 F.2d 217, 221-22 (5th Cir. 1984), *cert. denied*, 474 U.S. 968 (1985)), *cert. denied*, 493 U.S. 818 (1989). The instant appeals were simply another dilatory and harassing tactic, with little concern for the resolution of the conflict. Sanctions are most appropriate; in fact, compelled. *Ratcliff v. Texas*, 714 F.2d 24, 25 (5th Cir. 1983) (sanctions warranted when prosecution of appeal was for the purpose of harassment or out of sheer obstinacy). Accordingly, we impose sanctions pursuant to Fed. R. App. P. 38 against John A. Liljeberg, Jr., and Robert Liljeberg in the amount of double costs and damages of $1,000; and, pursuant to 28 U.S.C. § 1927, against their counsel, Kenneth C. Fonte, in the amount of $2,000.[19]

---

*Inc.*, No. 94-30272 (5th Cir. Nov. 21, 1994), which we also decide today.

[19] According to its plain terms, sanctions imposed under 28 U.S.C. § 1927 can only be for "excess costs, expenses, and attorneys' fees reasonably incurred because of ... [unreasonable and vexatious] conduct." Pursuant to § 1927, because these appeals "multip[ly] the proceedings in [these] case[s] unreasonably and vexatiously", all of the expenses incurred by Travelers for these appeals, to include attorneys' fees, are "excess". Based upon our familiarity with these appeals, the § 1927 papers filed in district court, the brief filed for Travelers, and the fact that it participated in oral argument, we are quite confident that its reasonable attorneys' fees exceeded $3,000, the total of the Rule 38 damages and § 1927 sanctions. For a more complete discussion of § 1927 sanctions, see the above referenced, related opinion rendered today, in which we affirmed the district court's imposition of such sanctions against Kenneth C. Fonte in one of the three cases from which these appeals were taken.

III.

Accordingly, for the foregoing reasons, we **AFFIRM** the denial of the Rule 60(b)(6) motions, and impose sanctions.

**AFFIRMED; SANCTIONS IMPOSED**