# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20045
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2018

Lyle W. Cayce
Clerk

In the Matter of: SCOTT RICHARD PENDERGRAFT; DANIELLE PAULINE PENDERGRAFT,

      Debtors

SCOTT RICHARD PENDERGRAFT; DANIELLE PAULINE PENDERGRAFT,

      Appellants

v.

NETWORK OF NEIGHBORS, INCORPORATED,

      Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2297

Before DAVIS, COSTA, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

    Debtors Scott Pendergraft and Danielle Pendergraft ("Scott P" and "Danielle P," also referred to collectively as "the Pendergrafts") appeal the

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20045

district court's order affirming the bankruptcy court's denial of motions for a new trial and recusal. For the reasons stated below, we AFFIRM.

The Pendergrafts befriended Squire Rushnell ("Rushnell") and Louise DuArt ("DuArt") in December 2010 while visiting Martha's Vineyard in Edgartown, Massachusetts. The next month, the Pendergrafts moved to Edgartown. Soon thereafter, Rushnell and DuArt invited the Pendergraft's to join the board of directors for their non-profit charitable corporation, Network of Neighbors, Inc. ("NON").[1] Scott P became NON's treasurer, and Danielle P became one of several directors. Danielle P's role with NON quickly expanded because of her background in event planning and public relations: the core needs of NON as a charitable organization focused on fundraising.[2]

In May 2011, at Danielle P's suggestion, NON entered into a contract with her Texas-based business, which she and her husband controlled, Holiday Public Relations and Events ("Holiday"). The contract gave limited authority to the Pendergrafts to allow Holiday to engage third-party vendors and to incur limited costs and expenses on NON's behalf. Ignoring these limitations, Holiday submitted fourteen invoices to NON totaling $51,531.47.[3] Scott P, as NON's treasurer, approved the invoices and wrote checks totaling $51,531.47 to Holiday from NON's bank account. Most of the checks (totaling $43,486.30) were funneled through Holiday to the Pendergrafts, which they ultimately spent for their personal benefit.

---

[1] Rushnell was the president of NON and DuArt was a director.

[2] Danielle P previously owned multiple event planning and public relations businesses.

[3] Some of the invoices were associated with a November 2011 contract that the bankruptcy court found to be void because the Pendergrafts fraudulently used Rushnell's signature from the May 2011 contract to make it appear as if he consented to the November contract.

2

No. 18-20045

Rushnell and DuArt eventually learned of the Pendergrafts' self-dealing. Shortly thereafter, NON, which was then controlled by Rushnell and DuArt, filed an adversary proceeding in the Pendergrafts' existing bankruptcy proceeding, seeking a determination that the money the Pendergrafts had funneled to themselves through Holiday was non-dischargeable under 11 U.S.C. § 523(a)(4) due to "fraud or defalcation while acting in a fiduciary capacity."

After a full hearing, the bankruptcy court found that the Pendergrafts had diverted the funds discussed above to Holiday for services that either were not performed, or not authorized by the contract, and used the funds for their personal benefit.[4] This action, the court found, constituted self-dealing without prior approval from NON's disinterested directors. Consequently, the court held that the Pendergrafts' debt to NON was non-dischargeable for defalcation while acting in a fiduciary capacity. The Pendergrafts then filed a timely post-trial motion to recuse the bankruptcy judge and for a new trial. The bankruptcy court denied these motions. Acting in its appellate capacity, the district court affirmed the bankruptcy court's judgment. The Pendergrafts filed a timely notice of appeal.

The Pendergrafts argue that the district court erred by affirming the bankruptcy court's denial of their motion for a new trial. According to the Pendergrafts, they should have received a new trial because the bankruptcy court committed prejudicial error by: (1) applying the wrong standard of mental culpability to debts incurred through fraud or defalcation while acting in a fiduciary capacity; (2) improperly piercing Holiday's corporate veil; and (3) denying Holiday, a non-party, due process of law by "putting [it] on trial"

---

[4] The bankruptcy court found that the Pendergrafts used the funneled money to make at least one payment to their individual bankruptcy trustee and to purchase airline and steamship tickets, furniture, meals, clothing, and hotel stays.

without adequate representation and forewarning. Alternatively, the Pendergrafts contend the district court should have reversed the bankruptcy court's denial of a new trial because that court's findings were against the great weight of the evidence.[5]

We review the lower courts' disposition of the Pendergrafts' motion for a new trial for abuse of discretion and find none.[6] First, the bankruptcy court applied the proper standard to determine the mental culpability of the Pendergrafts. The bankruptcy court applied the standard set forth by the Supreme Court in *Bullock v. BankChampaign, N.A.*[7] and found that the Pendergrafts knowingly defalcated monies from NON by diverting funds to themselves through Holiday without first seeking majority approval from NON's disinterested directors, which flouted NON's bylaws. Second, contrary to the Pendergrafts' argument, the bankruptcy court did not pierce Holiday's corporate veil. Rather, the court determined that the debt at issue was non-dischargeable because of the torts that the Pendergrafts personally committed. Holiday was not a party to the proceeding and was not affected by the judgment. Third, the Pendergrafts do not explain why Holiday's due process rights were violated simply by a discussion in the bankruptcy court's opinion that it was a conduit for their self-dealing. Finally, the record fully supported the bankruptcy court's factual findings. Rushnell's detailed testimony and the abundance of documentary evidence demonstrated that the Pendergrafts fraudulently wrote checks on NON's account to Holiday that the Pendergrafts

---

[5] When this Court "review[s] the decision of a district court, sitting as an appellate court, [it] appl[ies] the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Entringer Bakeries, Inc.*, 548 F.3d 344, 348 (5th Cir. 2008) (quotation marks omitted). We review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo. *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003).

[6] *Benson v. Tyson Foods, Inc.*, 889 F.3d 233, 234 (5th Cir. 2018).

[7] 569 U.S. 267, 269 (2013).

ultimately received. The district court did not err in affirming the bankruptcy court's denial of the Pendergraft's motion for a new trial.

The Pendergrafts next argue that the district court erred by affirming the bankruptcy judge's denial of the motion to recuse. We review the denial of a motion to recuse for abuse of discretion.[8] Generally, "one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification."[9] The "most egregious delay" is when "a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal."[10]

On appeal, the Pendergrafts argue, as they did before the district court, that the bankruptcy judge had a personal bias against them such that they did not receive a fair trial. According to the Pendergrafts, their attorney told them *prior to trial* that he did not believe the Pendergrafts would receive a fair trial because "for whatever reason, the judge hates y'all." Such non-specific facts do not present a ground for recusal. Moreover, where, as here, a losing party learns of facts he relies on as a basis for recusal before trial yet waits until after he receives an unfavorable ruling to file his motion, his motion is almost "*per se* untimel[y]."[11]

We have carefully examined the record in light of the Pendergrafts' complaint that the bankruptcy judge was hostile to them during the trial and prevented them from fully presenting their case. As the district court observed, managing a trial involving untrained pro se plaintiffs is frustrating for all involved. However, we see no evidence of hostility or abuse that prevented the

---

[8] *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999).
[9] *Travelers Ins. v. Liljeberg Enter.*, 38 F.3d 1404, 1410 (5th Cir. 1994).
[10] *United States v. Sanford*, 157 F.3d 987, 989 (5th Cir. 1998).
[11] *Id.*

No. 18-20045

Pendergrafts from presenting their case. The district court did not abuse its discretion by affirming the bankruptcy court's denial of the Pendergrafts' motion to recuse.

AFFIRMED.