United States Court of Appeals,

Fifth Circuit.

No. 94-20689.

Lance C. WINCHESTER, Plaintiff-Appellee,

v.

The UNITED STATES ATTORNEY FOR the SOUTHERN DISTRICT OF TEXAS,
Defendant-Appellant.

Nov. 14, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The United States Attorney for the Southern District of Texas appeals the quashal of an administrative subpoena duces tecum served upon the plaintiff, Lance C. Winchester. Carried with this appeal is Winchester's motion to dismiss the appeal for want of jurisdiction, which we now grant.

I.

The underlying facts of this appeal arise from the failure of the First Savings Association of East Texas ("First Savings"). Winchester, an attorney, had helped secure two multi-million-dollar loans from First Savings. The Federal Savings and Loan Insurance Corporation ("FSLIC") pursued Winchester and others over those loans, winning a four-million-dollar judgment against Winchester. On account of FSLIC's neglect, Winchester's debts to FSLIC were discharged in bankruptcy.

FSLIC's successor, the Resolution Trust Corporation, is now

considering a civil money penalty action against Winchester under 12 U.S.C. § 1833a (West 1989 & Supp.1995).[1]  As part of its investigation, the government served an administrative subpoena duces tecum upon Winchester, seeking production of documents and testimony concerning the loans.  Winchester responded by filing a petition seeking to set aside the subpoena.  An order entered on March 2, 1994, quashed the subpoena on procedural grounds, apparently because the government had failed to respond to the petition in a timely fashion.[2]

The government responded by filing a rule 60(b) motion on March 30, requesting that the district court reconsider the quashal in the interest of justice.  *See* FED.R.CIV.P. 60(b)(6).  On April 26, it also filed a notice of appeal with this court.

On May 5, the district court granted the motion to reconsider. On June 17, the government dismissed its appeal.  On July 19, the district court again quashed the subpoena, this time on the merits.

The government filed a second notice of appeal, and it is this appeal from the July 19 order that is now before us.  Carried along with this appeal is Winchester's motion to dismiss the appeal for want of jurisdiction, which we review *de novo.*

---

[1]This section also explicitly grants the Attorney General subpoena power:  "For purposes of conducting a civil investigation in contemplation of a civil proceeding under this section, the Attorney General may— ... (C) by subpoena, summon witnesses and require production of books, papers, correspondence, memoranda, or other records which the Attorney General deems relevant or material."  12 U.S.C. § 1833a(f)(1).

[2]The government argues that the district court erroneously treated Winchester's objection to the subpoena as a motion rather than as initiation of an independent action.

2

II.

The government concedes that, under the usual rule, the district court loses all jurisdiction over matters brought to us upon the filing of the notice of appeal. *See Henry v. Independent Am. Sav. Ass'n,* 857 F.2d 995, 997-98 & n. 10 (5th Cir.1988); *Brown v. United Ins. Co. of Am.,* 807 F.2d 1239, 1241 n. 1 (5th Cir.1987). Therefore, the district court was divested of jurisdiction upon the filing of the first notice of appeal, and consequently its May 5 order granting the rule 60(b) motion and vacating its March 2 judgment was void. That judgment thus was final and was rendered non-appealable by the government's dismissal of its first appeal. Any actions by the district court subsequent to the first notice of appeal were also void, including its July 19 quashal order, the predicate for this appeal.

As recently as last year, we had occasion to consider a situation strikingly similar to the one before us. In *Travelers Ins. Co. v. Liljeberg Enters.,* 38 F.3d 1404 (5th Cir.1994) (Barksdale, J.), we were faced with three appeals from denials of rule 60(b)(6) motions. *Id.* at 1407. As it turns out, these rule 60(b)(6) motions had been filed while the appeals from the underlying judgments were pending. *Id.* at 1407 n. 3.

In *Travelers,* we reaffirmed our general rule that a notice of appeal divests the district court of jurisdiction "except to take action in aid of the appeal until the case is remanded to it by the appellate court, or to correct clerical errors under Rule 60(a)." *Id.* (citation to federal practice treatise omitted). We

3

recognized, however, "the power of the district court to consider on the merits and *deny* a 60(b) motion filed after a notice of appeal, because the district court's action is in furtherance of the appeal." *Id.* (emphasis added, internal quotation marks omitted). We then noted the critical distinction between a district court's *denying* such a motion on the one hand, and *granting* it on the other: "When the district court is inclined to *grant* the 60(b) motion, ... then it is necessary to obtain the leave of the court of appeals. *Without obtaining leave, the district court is without jurisdiction, and cannot grant the motion.*" *Id.* (emphasis added, citation and internal quotation marks omitted). Such leave was neither requested nor granted in this case, and therefore the district court did not have jurisdiction to grant the rule 60(b) motion.

The government gamely cites authorities that are, at best, narrowly applied in civil cases and that certainly do not apply here. The government first puts forward *Oliver v. Home Indem. Co.,* 470 F.2d 329, 331 (5th Cir.1972) (holding that possible conservation of judicial energies might justify discretionary reconsideration by district court after appeal had been perfected). The government then cites *United States v. Dunbar,* 611 F.2d 985 (5th Cir.1980) (en banc), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980), for the so-called "dual jurisdiction" doctrine, but states that it is not urging us to apply that doctrine in this case.

Our decision in *Oliver* is best described as an anomaly, as the

4

government concedes. It is a decision that we have consistently declined to follow in subsequent cases. *See, e.g., Henry,* 857 F.2d at 997-98; *Brown,* 807 F.2d at 1241 n. 1. We recently reiterated our preference that either we or the district court have exclusive jurisdiction over a given case at any given time: "For obvious reasons, it makes little sense for two different courts to have the power to act on the same judgment at the same time, with the attendant risk that they will reach inconsistent conclusions and thus result in confusion and in a waste of judicial resources." *In re Butler,* 2 F.3d 154, 157 (5th Cir.1993).

Furthermore, *Oliver* contravenes our decision in *Ferrell v. Trailmobile, Inc.,* 223 F.2d 697 (5th Cir.1955), and therefore cannot be binding in this circuit, as one panel of this court cannot overrule another. *See Texas Refrigeration Supply v. FDIC,* 953 F.2d 975, 983 (5th Cir.1992). In *Ferrell,* we set out a procedure by which a party in a position similar to (or identical to) the government's in this case could preserve both direct appeal and post-judgment motion as avenues for relief. *See id.* at 698-99. In such cases, a perfected appeal deprives the district court of all jurisdiction except for the following: "[T]he district court retains jurisdiction to consider and deny such [post-judgment] motions, ... [and] if it indicates that it will grant the motion, the appellant should then make a motion in the Court of Appeals for a remand of the case in order that the district court may grant such motion." *Id.* at 699 (citation omitted).

Following this procedure will relieve a party from being

5

forced to elect between two available remedies. *See id.* Furthermore, our decision in *Travelers,* unlike that in *Oliver,* is completely consistent with the *Ferrell* procedure and reaffirms its continuing vitality. *See* 38 F.3d at 1407 & n. 3.

*Dunbar* is inapposite as well, because it was a criminal case in which unusual concerns were implicated. *Dunbar* involved an interlocutory appeal from the denial of a frivolous double jeopardy motion. *See* 611 F.2d at 986-87. The panel opinion, vacated by the decision to rehear the case *en banc,* had vacated Dunbar's criminal conviction on the ground that the double jeopardy motion had divested the district court of jurisdiction. *Id.* at 986. Thus, Dunbar had successfully evaded his conviction by filing a frivolous jurisdictional motion. *See id.* at 988. Permitting this type of maneuvering would have enabled any criminal defendant to obtain a continuance at any time simply by filing a frivolous double jeopardy motion and then appealing the denial of that motion. *Id.*

We decided *Dunbar* against the backdrop of the then-recent decision in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), in which the Court held that denials of motions to dismiss brought on double jeopardy grounds were immediately appealable under the "collateral orders" doctrine of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Abney,* 431 U.S. at 659, 97 S.Ct. at 2040. Faced with the special concern of safeguarding the constitutional protections afforded by the Double Jeopardy Clause, we attempted in *Dunbar* to fashion an exception to the general

6

divestiture-of-jurisdiction rule that would strike a balance between *Abney* concerns on the one hand and the desire to avoid disruption of the criminal justice system on the other. We thus held that an appeal from the denial of a double jeopardy claim would not divest the district court of jurisdiction if that court expressly found, in writing, that the claim was frivolous. 611 F.2d at 987-89. As is now readily apparent, the situation in *Dunbar* bears little resemblance, if any, to the case before us.

We therefore decline to follow either *Oliver* or *Dunbar,* relying once again on the familiar and usual rule that a perfected appeal divests the district court of jurisdiction. *See Henry,* 857 F.2d at 997 (citing *Taylor v. Sterrett,* 640 F.2d 663, 667 (5th Cir. Unit A Mar. 1981)) (second citation omitted).

### III.

The government also argues that the district court "effectively" reopened the case when it granted the government's rule 60(b) motion. Thus, the argument proceeds, the dismissal of the first notice of appeal prior to entry of final judgment "effectively" cured any jurisdictional defect. Under this scenario, the district court's "order" of July 19 constitutes a final order that may serve as a legitimate predicate for this appeal. This argument, however, contravenes a fundamental rule of law concerning jurisdiction: A court either has jurisdiction or it does not.

The government's first appeal, once perfected, deprived the district court of jurisdiction, rendering void that court's

7

subsequent actions in this case. The government's dismissal of that perfected appeal rendered the district court's final order of March 2 non-appealable. The second appeal—the one before us now—is without jurisdiction because it is predicated on the July 19 order, which the district court did not have jurisdiction to issue.

Were we to accept the government's argument, we would be guilty of creating a new doctrine, one that counsel for the petitioner appropriately dubbed "virtual jurisdiction" during oral argument. Such a concept is particularly unwarranted in this case, as the government could have resorted to the *Ferrell* procedure to avoid electing between direct appeal and post-judgment motion as potential avenues of relief.

Because the government did not avail itself of the *Ferrell* procedure, we have no choice but to grant Winchester's motion to dismiss this appeal for want of jurisdiction. The appeal, accordingly, is DISMISSED.