In re Sen. Troy FRASER, Sen. Kenneth Armbrister, Sen. Jane Nelson, Rep. Tom Craddick, Rep. Dianne White Delisi, Rep. Kyle Janek, and Rep. Dan Kubiak.

In re Private Counsel, Fee Agreement.

Nos. 5:98–CV–45, 5:98–CV–270.

United States District Court,
E.D. Texas,
Texarkana Division.

May 16, 2000.

John J. McKetta, III, P.M. Schenkkan, Graves Dougherty Hearon & Moody, Austin, TX, for Petitioners.

William Andrew Taylor, Attorney General Office, Austin, TX, David Grant Kai-

---

ser, Kaiser & Morrison PC, Houston, TX, Michael E. Tigar, Tigar Law Firm, Washington, DC, for Respondents.

Elizabeth Saunders, Austin, TX, pro se.

### ORDER

FOLSOM, District Judge.

Before the Court is Private Counsel's "Election Concerning Attorney Fees, Motion Concerning Election[,] and Withdrawal of Motion," (Dkt. No. 89; 5:98–CV–270). Also before the Court is the State of Texas's, the Texas Attorney General's, and the Legislator's (hereinafter the "State") Joint Response to Private Counsel's Election, (Dkt. No. 92; 5:98–CV–270), and the State's Motion to Dismiss, (Dkt. No. 46; 5:98–CV–45). The Court, after considering the motions, the parties' briefs, and the applicable law, enters the following order.

### I.

### Background.

The above-styled matters arise from a 1996 agreement between then-Texas attorney general Dan Morales and several private attorneys, hereinafter "Private Counsel."[1] The agreement—titled the Outside Counsel Agreement or "OCA"—called for Private Counsel to represent the State in its suit against the tobacco industry (the "tobacco litigation"). Specifically, the OCA required, inter alia, that Private Counsel advance up to $10 million to cover the cost of prosecuting the suit. The OCA further provided that Private Counsel were entitled to a 15% share of the State's recovery plus reimbursement for expenses.

On March 26, 1996, Private Counsel, on behalf of the State, filed suit in this Court against the tobacco industry. See Texas v. American Tobacco Co., No. 5:96–CV–91 (E.D.Tex.). During the 22 months that followed the suit generated 1,856 docket entries, including thousands of pages of

briefing. Approximately 23 million documents were produced, hundreds of depositions were taken, 50,000 exhibits were listed, and 1,500 witnesses were designated. Four hundred seventy-two motions were filed and 21 hearings were conducted. Four hundred fifty hours—or about six months—were allotted for trial of the case.

In late 1997, the week before jury selection was scheduled to begin, and with a nationwide tobacco settlement in the works that threatened to limit the State's recovery, the State and the industry achieved a settlement. The terms of the settlement were memorialized in the Comprehensive Settlement and Release ("CSA"), which on January 16, 1998 was submitted for Court approval. The same day, Private Counsel submitted a motion for approval of their attorneys' fees. On January 22, 1998, the Court approved the terms of the CSA and adopted it as an enforceable order. Also on January 22, the Court entered a memorandum opinion and order which concluded that the amount of attorneys' fees Private Counsel was due under the OCA—about $2.3 billion—was reasonable.

Shortly thereafter, on January 30, 1998, a mandamus action in the Texas Supreme Court filed by a group of Texas legislators was removed to this Court. See In re Fraser, No. 5:98–CV–45 (E.D.Tex.). The legislators had asked the Texas court to require Attorney General Morales to, inter alia, declare that the attorney general of Texas had no statutory or constitutional authority to bind the State to a contingent fee arrangement for legal services. The legislators argued that removal of the mandamus action to federal court would violate the Eleventh Amendment since the suit sought to compel a state officer to act according to state law. The legislators also argued that the OCA's contingent fee provision was unenforceable because the State, via the Eleventh Amendment, was

---

1. "Private Counsel" is defined as Walter Umphrey; John M. O'Quinn; John Eddie Williams; Reaud, Morgan & Quinn, Inc.; Nix, Patterson & Roach, L.L.P.; and Ness,

Motley, Loadholt, Richardson & Poole, P.C. See In re Fraser, 75 F.Supp.2d 572, 575 n. 2 (E.D.Tex.1999).

immunized against being sued in federal court. The same legislators, on February 5, 1998, along with Governor George W. Bush, separately, moved to intervene in 5:96–CV–91. The intervenors, raising much the same issues as those raised in *In re Fraser*, asked for a separate resolution of the attorneys' fees questions and/that the Court stay the disbursement of the settlement funds until the fee issue was resolved.

About the same time as the legislators and Governor were voicing concerns about Private Counsel's fees, a group of Texas counties and hospital districts also moved to intervene in the tobacco litigation. The counties and hospitals were concerned that the CSA would leave them uncompensated for the costs they alone incurred in treating smoking-related illness. For the tobacco industry, it was paramount that it be absolved from liability for cost of treating past smoking-related illness. Indeed, the CSA provided that the settlement was void if the industry was not so immunized. The counties' and hospital districts' suggestion that they were not bound by the CSA therefore threatened to kill the settlement. It was against this backdrop, and in light of the unresolved questions regarding Private Counsel's fees, the enforcement of the CSA was stayed.

At some point during the months that followed the counties and hospital districts and the State reached an agreement concerning the distribution of settlement proceeds. Then, on June 22, 1999, an agreement was achieved between the antagonists to the attorneys' fees issue (the "Agreement"). Under the Agreement, Private Counsel were presented with a choice: they could either attempt to enforce the contingent fee provision in the OCA, or they could elect to take an amount awarded by an arbitration panel. If they chose the latter, the tobacco industry would pay the panel award and Private Counsel would waive any claim they might have had against the State under the OCA. The Agreement also pro-

vided that all pending motions pertaining to the fee dispute would be stayed until Private Counsel made their election. The Agreement further provided that the fee dispute would be severed from the tobacco litigation. On July 24, 1998, the Court adopted the Agreement and separated the fee issues from the tobacco litigation. *See In re Private Counsel Fee Agreement*, No. 5:98–CV–270 (E.D.Tex.).

On December 15, 1998, the panel awarded Private Counsel $3.3 billion in fees. Under the Agreement, Private Counsel had until December 30 to make their election. On that day, Private Counsel filed a motion to extend the election deadline. The State opposed the motion and argued that the Court could not consider an extension until the Court first ruled on the State's challenges to the Court's jurisdiction. On November 5, 1999, the Court concluded that the State's jurisdictional arguments were without merit. The Court also gave Private Counsel until November 19 to make its election under the Agreement. On November 19, 1999, Private Counsel elected to take the panel award and to waive its right to sue under the OCA. The instant motions followed.

## II.

### Mootness.

■ It is fundamental that federal courts lack jurisdiction to decide questions in moot cases "because their constitutional authority extends only to actual cases or controversies." *See Iron Arrow Honor Soc. v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983). Generally, a settlement renders moot any case between the parties growing out of the settled dispute. *See I.T.T. Rayonier, Inc. v. United States*, 651 F.2d 343, 345 (5th Cir. Unit B 1981). This is true even if the parties remain at odds over the particular issues that they are litigating. *See id.; see, e.g., Lake Coal Co., Inc. v. Roberts & Schaefer Co.*, 474 U.S. 120, 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985)(declining to decide

questions presented by motion of parties where underlying case settled).

The State and Private Counsel agree—and the Court concurs—that all pending motions of whatever character filed in 5:98–CV–45 and 5:98–CV–270 should be dismissed. In essence, both cases concerned Private Counsel's attorneys' fees under the OCA. As previously noted, Private Counsel elected to forgo the OCA's fee arrangement. Accordingly, the questions raised in those cases are moot, and all pending motions must be dismissed.

## III.

### Vacatur.

The State asks the Court to vacate its November 5, 1999 interlocutory orders in 5:98–CV–45 and 5:98–CV–270. The State argues that vacatur is appropriate because the actions in which they were entered are now moot. Private Counsel oppose vacatur. Although not cited in their motion, Rule 60(b) of the Federal Rules of Civil Procedure, which provides that "upon motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding," is the appropriate provision under which to consider the State's request. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).

As a preliminary matter, the Court notes that the State has taken an appeal on the interlocutory orders at issue. It is well-established that once an appeal is taken, the district court is divested of jurisdiction "except to take action in aid of the appeal until the case is remanded to it by the appellate court, or to correct clerical errors under Rule 60(a)." *See Travelers Ins. Co. v. Liljeberg Enters.,* 38 F.3d 1404, 1407 n. 3 (5th Cir.1994); *see generally Rutherford v. Harris County,* 197 F.3d 173, 190 (5th Cir.1999) (citing *Winchester v. U.S. Attorney for S. Dist. of Tex.,* 68 F.3d 947, 948 (5th Cir.1995)). Our circuit has recognized, however, that the district

court is empowered "to consider on the merits and *deny* a Rule 60(b) motion filed after a notice of appeal, because the district court's action is in furtherance of the appeal." *See Winchester,* 68 F.3d at 949 (emphasis court's; internal quotation omitted). Conversely, if a district court is inclined to *grant* the 60(b) motion, then it is necessary to obtain the leave of appellate court. *See id.* "Without obtaining leave, the district court is without jurisdiction, and cannot grant the motion." *Id.* For the reasons discussed below the Court concludes that the State's request to vacate the November 5 interlocutory orders is not well-taken. Accordingly, consistent with the aforementioned jurisdictional constraints, vacatur is denied.

The propriety of vacatur for mootness was the subject of the Supreme Court's opinion in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership.* In that case, the parties settled their dispute while the case was on appeal to the Supreme Court. *Bonner Mall,* 513 U.S. at 20, 115 S.Ct. 386. Bancorp, which lost in the court of appeals, argued that since the case was now moot the Court should order the court of appeals to vacate its opinion. *Id.* The Court declined to do so, stating that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur." *Id.* at 26, 115 S.Ct. 386 (internal quotation omitted). Thus, absent "exceptional circumstances," the Court concluded that "settlement does not justify vacatur of a judgment under review." *Id.* at 29, 115 S.Ct. 386.

The Court believes that the rationale announced in *Bancorp* applies to the orders at issue here. Though here the opinions concern interlocutory issues, there can be little doubt that, like the appeals court opinion in *Bancorp,* opinions on such matters are a valuable resource for litigants and courts. Indeed, the issues that were the subject of the November 5 opinions in

many respects presented questions of first impression. Moreover, it would burdensome, to say the least, were every court required to vacate its opinions and orders in cases that have become moot through settlement or otherwise.

Instead of challenging the social value of the November 5 orders, the State argues that *Bancorp* does not apply because Private Counsel's unilateral action caused the case to become moot. In *Bancorp* the Court noted that the "principal condition" which makes vacatur an appropriate remedy is that the case was made moot by either "happenstance" or the "unilateral action of the party who prevailed below." *Id.* at 24–25, 115 S.Ct. 386. In such a situation, "the ends of justice exact that the judgment below should not be permitted to stand when without fault of the [petitioner] there is no power to review it upon the merits." *Id.* (internal quotation omitted). So, for example, in *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), a suit brought by a state employee, the Supreme Court vacated the opinion of the court of appeals when the employee's decision to quit for a job in the private sector made the case moot and prior decisions unreviewable. The situation is different, however, where mootness is caused by settlement. In that case, vacatur is not appropriate because the party that lost below voluntarily forfeited its right to appeal. "To allow a party who steps off . . . the path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from the considerations of fairness to the parties—disturb the orderly operation of

the federal judicial system." *Bancorp*, 513 U.S. at 26, 115 S.Ct. 386.

The Court concludes that the State is not entitled to vacatur since mootness was the product of an agreement between the State and Private Counsel. Under the terms of the Agreement, Private Counsel were given the opportunity to receive their fees from either the panel award or from the proceeds of the State's settlement with the tobacco industry. Of course if Private Counsel were to decide—as they did—that they would take the panel award then Private Counsel would not have a "claim" against the State. Absent such a claim, the State's assertion of Eleventh Amendment immunity would be moot and the Court's previous orders therefore unreviewable.

Likewise, the State has failed to establish an equitable entitlement to vacatur of the Court's November 5 orders. In *Bancorp* the Court explained that a party seeking vacatur must demonstrate an equitable entitlement to that "extraordinary" remedy. *Id.* The issues addressed in the Court's November 5 orders where the subject of lengthy and acrimonious debate. For its part, the State demanded that the Court first address the issues raised in the November 5 orders before it addressed other issues in the case, including Private Counsel's motion for an extension of time.[2] Moreover, as the parties attempted negotiate a compromise, during which the Court paused from its consideration of the State's motions, the State asked the Fifth Circuit to compel this Court to address the very issues that they now seek to have vacated. Accordingly, the Court concludes

---

2. For example, the following exchange occurred at the August 11, 1999 hearing in *In re Fraser* and *In re Private Counsel Fee Agreement:*

> The Court: Well, what about, Mr. Taylor, the motion requesting an extension, do you feel that the Court has authority to grant the motion?
>
> Mr. [Andy] Taylor [, First Assistant Attorney General]: The only way the Court could

> grant or deny a Motion for Extension of Time that was filed is to first rule on the substantive question of whether this Court has the authority by virtue of subject matter jurisdiction and whether or not can rule without doing violence to the Eleventh Amendment immunity that the State of Texas has.
>
> (Tr. Aug. 18, 1999 Hr'g, Dkt. No. 74, 5:98–CV–270, at 15.)

the State is not entitled to vacatur of the Court's November 5 opinions.

## IV.

### Order.

For the foregoing reasons, it is hereby

**ORDERED** that all motions pending in *In re Fraser,* 5:98–CV–45, and in *In re Private Counsel Fee Agreement,* 5:98–CV–270, are **DISMISSED AS MOOT**. Further, it is

**ORDERED** that these actions are **DISMISSED WITH PREJUDICE**.