IN THE UNITED STATES COURT OF APPEALS

**F I L E D**
**March 5, 2003**

FOR THE FIFTH CIRCUIT

_____

No. 02-20042

_____


KARAHA BODAS COMPANY, L.L.C.,

Plaintiff-Appellee,

versus

PERUSAHAAN PERAMBANGAN MINYAK DAN GAS BUMI NEGARA, ET AL.,
Defendants,

PERUSAHAAN PERAMBANGAN MINYAK DAN GAS BUMI NEGARA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Texas
(H-01-CV-634)
_____

Before KING, Chief Judge, DAVIS, Circuit Judge, and ROSENTHAL[*],
District Judge.

PER CURIAM:[**]

    Appellant, Perusahaan Perambangan Minyak Dan Gas Bumi Negara

("Pertamina") contracted with appellee, Karaha Bodas Company,

_____

[*]    District Judge of the Southern District of Texas, sitting by designation.

[**]    Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

L.L.C. ("KBC") to develop geothermal energy sources in Indonesia for electrical power generation. The parties executed two contracts. Both contained an arbitration clause. In 1998, financial crises in Indonesia led to the suspension of the project. KBC initiated arbitration proceedings, which were conducted in Switzerland. The Tribunal entered an award in favor of KBC for damages resulting from the cancellation of the project. KBC then filed suit in the federal district court in the Southern District of Texas to confirm that award. This appeal is from the district court's grant of summary judgment confirming the award and rejecting Pertamina's challenges to the arbitration procedures and result.

Months after briefing on this appeal concluded, Pertamina filed in the district court a motion to set aside judgment under Rule 60(b)(2), based on newly discovered evidence that Pertamina contended should have been disclosed during the arbitration, and under Rule 60(b)(5), based on the decision of an Indonesian court annulling the arbitration award. A few weeks later, Pertamina filed in this court a motion to supplement the record and for supplemental briefing, seeking to have this court include in the appellate record both the recently discovered evidence and the information as to the post-judgment decision of the Indonesian court annulling the award. The developments in the Indonesian court are the subject of a separate appeal now pending before a

2

different panel of this court; Pertamina urges this court to supplement the record on this appeal with the record of the separate pending appeal.

Pertamina urges this court to supplement the record and consider the additional evidence without the benefit of the district court's ruling on the Rule 60 motion pending in that court. KBC urges this court simply to deny the motion to supplement the record and for supplemental briefing. The threshold questions presented in this case are how this court should address the request to supplement the record to add materials that the district court did not consider, and how the district court should treat the Rule 60(b) motion to vacate its judgment when the appeal from the judgment is pending. Because the motion to supplement raises the same questions that are before the district court in the Rule 60(b) motion, the district court should consider those questions first. The Rule 60(b) motion is still pending in the district court, and that court has not yet indicated whether it intends to grant or deny the motion. Accordingly, the appeal from the grant of summary judgment will be held in abeyance to permit a limited remand for the district court to consider the merits of the Rule 60(b) motion.

## I. Background

Petitioner-appellee KBC explores and develops geothermal energy sources and builds electric generating stations using

3

geothermal sources.  Respondent-appellant Pertamina is an oil, gas, and geothermal energy company owned by the Government of Indonesia.[***]  KBC signed two contracts to produce electricity from geothermal sources in Indonesia in November 1994.  The Joint Operation Contact granted KBC the right to develop geothermal energy sources in the Karaha area of Indonesia; Pertamina was to manage the project and receive the electricity generated.  (Final Award, ¶ 4).  Under the Energy Sales Contract, PLN agreed to purchase from Pertamina the energy generated by KBC's facilities. (*Id*. at ¶ 5).  Both contracts contained arbitration clauses, calling for the application of  the Arbitral Rules of the United Nations Commission on International Trade Law ("UNCITRAL") and specifying Geneva, Switzerland as the place of any arbitration.  On September 20, 1997, the Indonesian government suspended the project because of the government's financial crisis.  The project was indefinitely suspended on January 10, 1998.  On February 10, 1998, KBC notified Pertamina and PLN that the government's suspension constituted an event of force majeure under the contracts.

KBC initiated arbitration proceedings on April 30, 1998. Pertamina disputes the procedures used in the appointment of the arbitrators and the consolidation of the arbitrations under the two contracts.  In its Preliminary Award, the Tribunal held that the

---

[***] PLN, an electric utility owned by the Government of Indonesia, was a party to the arbitration but was dismissed from the district court action.

4

Tribunal was properly constituted, that consolidation was proper, and that the Government of Indonesia was not a proper party. KBC filed its Revised Statement of Claim on November 24, 1999. Pertamina received a number of extensions before it filed its reply brief on April 7, 2000, and KBC filed its rebuttal on May 8, 2000. In response to the rebuttal, Pertamina sought additional discovery and a continuance of the proceedings, scheduled to begin on June 19, 2000, claiming that KBC had raised new assertions and new elements of its case-in-chief not contained in the Revised Statement of Claims. The parties had vigorously disputed whether KBC could have obtained financing to build the project if the government had not issued the suspension decree. Pertamina asserted that KBC's rebuttal introduced a new theory as to how it would have obtained financing, claiming that one of KBC's direct investors, FPL Energy ("FPL"), would have provided project financing if no other source was available. Pertamina sought discovery of FPL documents relating to the claim that FPL was prepared to finance the KBC project. The Tribunal denied Pertamina's requests for this discovery and for a continuance. The hearing on the merits was held in June 2000. The Tribunal stated in the final award that all parties had "waived their respective requests for discovery" at the conclusion of the hearing. (Final Award, ¶ 32). Pertamina disputes any waiver.

5

In the Final Award, issued in December 2000, the Tribunal found that Pertamina was liable for nonperformance of the contracts. The Tribunal interpreted the contractual provisions as "putting the consequences of a Governmental decision which prevents the performance of the contract at Pertamina's . . . sole risk." (Final Award, ¶ 57). The Tribunal awarded KBC $111.1 million to recoup its expenditures and $150 million in lost profits.

KBC brought an action in the district court to enforce the arbitral award. Under the Convention on the Recognition and Enforcement of Foreign Tribunal Awards (the "New York Convention"), 9 U.S.C. § 201, *et seq*., a district court must confirm an arbitration award unless it finds one of seven grounds specified by the New York Convention for refusal or deferral of the award. 9 U.S.C. § 207; <u>Yusuf Ahmed Alghanim & Sons v. Toys "R" Us</u>, 126 F.3d 15, 23 (2d Cir. 1997). Pertamina challenged the award on three grounds under the New York Convention: the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties; Pertamina was "unable to present its case" to the Tribunal; and enforcement of the award would violate public policy of the United States, the country where enforcement of the award was sought. As to the first ground, Pertamina contended that the decision to consolidate the arbitrations under the two contracts was procedurally improper and that KBC's unilateral appointment of an arbitrator violated the

6

rules specified in one of the contractual arbitration provisions. As to the second ground, Pertamina argued that the Tribunal improperly reversed its finding in the Preliminary Award that Pertamina did not breach the contracts when it held Pertamina liable for nonperformance in the Final Award; that the Tribunal's denial of Pertamina's request for discovery of FPL's records prevented Pertamina from fully presenting its case; and that the Tribunal's denial of a continuance after KBC's rebuttal prevented Pertamina from fully preparing its response. As to the third ground, Pertamina argued that the award violated the international "abuse of rights" doctrine and punished Pertamina for obeying the Indonesian government's decree. In the district court, Pertamina requested a delay in responding to the summary judgment motion under Federal Rule of Civil Procedure 56(f), seeking discovery of the same FPL records it had unsuccessfully sought in the arbitration.

The district court confirmed the award, rejecting each of Pertamina's grounds for refusal. In so doing, the district court carefully considered the record relating to Pertamina's ability in the arbitration proceeding to challenge KBC's claim that it could have obtained project financing from its investor, FPL. The district court denied Pertamina's Rule 56(f) request for additional discovery to obtain records. The notice of appeal from the district court judgment was filed on January 2, 2002.

7

In August 2002, an Indonesian court set aside the arbitral award.  KBC contends that this order is void because the district court had issued an injunction ordering Pertamina to "take no action . . . to prosecute the action it filed against KBC in the District Court of Central Jakarta." Pertamina has another appeal, pending before another panel of this court, challenging that injunction.  Karaha Bodas Co. LLC v. Perusahaan, Etc., Case No. 02-20550.

KBC had also filed suit in Canada to confirm the arbitral award.  In October 2002, after Pertamina perfected its appeal to this court, Pertamina discovered in the Canadian proceeding that FPL and one other KBC investor, Caithness, held political risk insurance covering the KBC project through Lloyd's of London.  Pertamina also learned that Lloyds had paid $75 million under that insurance policy to FPL and Caithness.

In December 2002, Pertamina filed a motion in the district court to vacate the judgment under Rule 60(b), and, in this court, a motion to supplement the record and briefing.  In both motions, Pertamina argues that the existence of the political risk insurance coverage in favor of FPL undermines KBC's claims, and the Tribunal's finding, that the contracts allocated political risks entirely to Pertamina.  Pertamina also argues that the existence of the insurance coverage undermines KBC's arguments that FPL would have financed the project in order to avoid losing an earlier

8

investment which was significantly less than the amount of the insurance proceeds FPL received. Pertamina argues that the payment of the insurance proceeds undermines the Tribunal's determination of damages. Pertamina urges that KBC's failure to disclose the policy during the arbitration provides a basis for refusing to enforce the award, making the district court's summary judgment improper. As part of the motion to supplement in this court, Pertamina presents a report by an expert on arbitration proceedings and legal ethics, providing an opinion as to the legal significance of KBC's failure to disclose the political risk insurance policy during the arbitration proceedings. KBC has opposed both the motion to supplement the record in this court and the motion to vacate the judgment filed in the district court.

## II. <u>Analysis</u>

### A. <u>The Motion to Supplement</u>

Federal Rule of Appellate Procedure 10(e), providing for correction or modification of the appellate record, does not generally permit an appellate court to add to the record materials that were not before the district court. <u>See</u> <u>Morrison v. Hall</u>, 261 F.3d 896 n.4 (9th Cir. 2001)("Rule 10(e) cannot be used to add to or enlarge the record on appeal to include material which was not before the district court")(citations omitted); <u>In re Capital Cities/ABC</u>, 913 F.2d 89, 97 (3d Cir. 1990); <u>Ross v. Kemp</u>, 785 F.2d 1467, 1474 (11th Cir. 1986); <u>U.S. v. Hillsberg</u>, 812 F.2d 328, 336

(7th Cir. 1987)("Rule 10(e) does not give this court authority to admit on appeal any document which was not made a part of the record in the district court); Kemlon Prod. and Dev. Co. v. U.S., 646 F.2d 223, 224 (5th Cir. 1981)("A court of appeals will not ordinarily enlarge the record on appeal to include material not before the district court"); U.S. v. Page, 661 F.2d 1080, 1082 (5th Cir. 1980)("Rule 10(e) exists to allow the district court to conform the record to what happened, not what did not.")(citations omitted). The Fifth Circuit has ordinarily refused to supplement an appellate record with materials contained in the record of related pending cases. See U.S. v. Flores, 887 F.2d 543, 546 (5th Cir. 1989); Kemlon, 646 F.2d at 224. Pertamina does not allege that the information it seeks to add to the record was omitted by error or accident. It considers the information "newly discovered evidence." Although appellate courts have an inherent equitable power to supplement the record on appeal to include information not presented to the district court, it is limited to circumstances not present here. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993); Ross v. Kemp, 785 F.2d 1467, 1474-75 (11th Cir. 1986); Gibson v. Blackburn, 744 F.2d 403, n.3 (5th Cir. 1984); Dickerson v. Alabama, 667 F.2d 1364, 1367 (11th Cir. 1982). Pertamina cannot add the newly discovered evidence to the record under appellate Rule 10(e). Pertamina's Rule 60(b) motion

10

in the district court is based on this newly discovered evidence.

Pertamina's motion to supplement the appellate record is denied.[****]

B.    The Rule 60(b) Motion

The Fifth Circuit, with other appellate courts, has addressed how to treat a Rule 60(b) motion for relief from a judgment filed while that judgment is on appeal.  Winchester v. U.S. Attorney for the Southern District of Texas, 68 F.3d 947, 949 (5th Cir. 1995).  The procedure adopted recognizes the "primacy of a district court's authority over motions for relief from its own judgments and the prohibition against two courts simultaneously exercising jurisdiction over a case."  Fobian v. Storage Technology Corp., 164 F.3d 887, 889 (4th Cir. 1999).  Under this procedure, a notice of appeal divests the district court of jurisdiction "except to take action in aid of the appeal until the case is remanded to it by the appellate court, or to correct clerical errors under Rule 60(a)."  Winchester, 68 F.3d at 949 (quoting Travelers Ins. Co. v. Liljeberg Enters., 38 F.3d 1404, 1407 n.3 (5th Cir. 1994)).  The district court has the power to consider and deny a Rule 60(b) motion filed after a notice of appeal, because the denial of the Rule 60(b)

---

[****]This court can take judicial notice of another court's judicial action. See Maher v. Hyde, 272 F.3d 83, n.3 (1st Cir. 2001); Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001); U.S. v. Jones, 29 F.3d 1549, 1553-54 (11th Cir. 1994)(an appellate court may take judicial "notice of another court's ruling . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings.")

motion is in furtherance of the appeal. <u>Winchester</u>, 68 F.3d at 949. However, a district court may not grant a Rule 60(b) motion filed after a notice of appeal, without leave from the appellate court. "When the district court is inclined to grant the 60(b) motion, . . . then it is necessary to obtain the leave of the court of appeals. Without obtaining leave, the district court is without jurisdiction, and cannot grant the motion." <u>Id.</u>; <u>Ferrell v. Trailmobile, Inc.</u>, 223 F.2d 697, 698-699 (5th Cir. 1955).

Under the Fifth Circuit's procedure, the appellate court asks the district court to indicate, in writing, its inclination to grant or deny the Rule 60(b) motion. If the district court determines that the motion is meritless, the appeal from the denial is consolidated with the appeal from the underlying order. If the district court is inclined to grant the motion, it should issue a short memorandum so stating. Appellant may then move this court for a limited remand so that the district court can grant the Rule 60(b) relief. After the Rule 60(b) motion is granted and the record reopened, the parties may then appeal to this court from any subsequent final order. <u>See</u> <u>Fobian</u>, 164 F.3d at 890-91; <u>Winchester</u>, 68 F.3d at 949; <u>Tolliver v. County of Sullivan</u>, 957 F.2d 47, 49 (2d Cir. 1992); <u>Summers v. Utah</u>, 927 F.2d 1165, 1168-69 (10th Cir. 1991); <u>Com. of Puerto Rico v. SS Zoe Colcotrone</u>, 601 F.2d 39, 41-42 (1st Cir. 1979); <u>First Nat'l Bank of Salem, Ohio v.</u>

12

Hirsch, 535 F.2d 343, 345-46 (6th Cir. 1976) (quoting Smith v. Pollin, 194 F.2d 349, 350 (D.C. Cir. 1952)).

This procedure balances efficiency considerations with the prohibition against dual exercise of jurisdiction by a district court and an appellate court. "It would be both inefficient and unfortunate to require the district court to wait until the underlying appeal is completed before giving any indication of its desire to grant a pending Rule 60(b) motion. Such a prohibition would likely render the initial appeal pointless in cases where the district court ultimately grants the motion following appeal." Fobian, 164 F.3d at 890. However, if the district court were to grant the Rule 60(b) motion and reopen the record while the appeal was still pending, this court and the appellate court would be impermissibly exercising jurisdiction over the same case. These conflicting concerns are resolved by having the district court deny, or indicate its intention to grant, the Rule 60(b) motion before this court proceeds with the appeal.

In this case, "the trial court is in a much better position to pass upon the issues presented in a motion pursuant to Rule 60(b)." Standard Oil Co. of Ca. v. U.S., 429 U.S. 17, 19, 97 S. Ct. 31, 50 L.Ed.2d 21 (1976). The district court's familiarity with the record makes it far better situated than this appellate court to determine quickly and easily whether the Rule 60(b) motion has merit. The district court is better situated than this court

13

initially to determine the impact of Pertamina's newly-discovered evidence of the existence of political risk insurance coverage on the judgment confirming the arbitration award. That determination will require an examination of the relationship between that evidence and the existing record. Pertamina asserts that the evidence of the insurance calls into question the Tribunal's decisions on discovery in the arbitration process; the Tribunal's decision that the contracts allocated political risks entirely to Pertamina; KBC's contention in the arbitration that FPL was willing to provide financing to protect its earlier investment; and the Tribunal's calculation of damages suffered by KBC. Pertamina asserts that KBC perpetrated fraud on the Tribunal by failing to disclose the insurance; KBC asserts that Pertamina failed to exercise due diligence that would have revealed the insurance coverage during the arbitration proceeding. The district court's familiarity with the record puts it in a better position initially to rule on these contentions.

If the district court decides that the Rule 60(b) motion should be denied, the district court can do so without disturbing appellate jurisdiction over the underlying judgment, permitting the appeal from the denial of the Rule 60(b) motion to be consolidated with the underlying appeal. If the district court decides to grant the Rule 60(b) motion, it must necessarily vacate the underlying judgment and reopen the record. The reopening of the record is

precisely the result Pertamina seeks in this court by its motion to supplement, based on the same arguments the district court must consider in determining whether to grant or deny the motion to vacate.

This court remands for the limited purpose of asking the district court to consider the merits of the Rule 60(b) motion. This court does so without expressing any opinion on the merits of that motion and without ruling at this time on the appeal from the grant of summary judgment. The appeal is in abeyance pending the resolution of the Rule 60(b) motion. If the district court finds the Rule 60(b) motion meritless, the appeal from that denial can be consolidated with this appeal. If the district court determines that it is inclined to grant the Rule 60(b) motion, it should issue a short memorandum so stating. Pertamina can then move this court for a limited remand so that the district court can grant the Rule 60(b) relief, vacating the judgment and reopening the record. Once that has been accomplished, the parties can appeal to this court from any final order.

This court retains jurisdiction over the cause appealed except for the limited REMAND to permit the district court to state, in writing, whether it is inclined to deny or grant the Rule 60(b) motion.

15