**Raymond L. AMES, et al., Plaintiffs,**

v.

**Leonard D. MILLER, et al., Defendants.**

**No. 4:98–CV–0427–A.**

United States District Court, N.D. Texas, Fort Worth Division.

Feb. 5, 2002.

Raymond L. and Mary Anne Ames, Rebecca Ames, Joel Ames, Mazie Bailey, Lynette Barkell, Charles R. Barrows, Charles A. Barrows, Steve Bastrom, Lanell Borges, Michael Bowler, Wallace Branting, Jamie Chambers, David A. Cole, Gary Cole, Jonohn Cole, Adrien Corbett (Porthaven), Stevone Vukovitch de Aguirre, Valerie Cruz, Frederick Cupernall, US Dhillon MD Inc. M P Pension Plan, Helen and Stanley Dytrych, John A. and Jane L. Elder, Pat Elliott, Param Fagoora, Mona Fernandez, Michael Finazzo, Richard Hanson, Joseph and Sunny Higgins, Lori Ann Hiller, James and Judy Hoffman, James Ingram, Stacey Ann Keller-Moore, Orlin Kvamme, Trustee, Mitchell Langford, Trustee, Virginia Lee, Cherryl E. Lyons, Alma Manenica, Lindy and Diame Nelson, George and Ruth Noland, Robert O'Brien, Trustee, Dorothy Roemer, Antoniette Sherman (TMG, Trust), Robert Sherman, Bill Slaney, Aaron and Charlotte Snyder (ACES, Trust), Donna Taylor, Fred Tomlin, V. Hal Treadaway, Dennis Vaughn, Lloyd Vick, Nadarasa Visveshwara Family Trust, David Vogel, Robert Wolff, (TMG, Trust), Steve Yadeskie, pro se plaintiffs.

Robert V. DeTour, Claude D. Smith, Leonard D. Miller, pro se defendants.

D. Grant Seabolt, Jr., Simpson, Woolley & McConachie, Dallas, TX, for Charles A. Roberts and Bel-Air Trust.

John Patrick McDonald, Thomas George Yoxall, Karin Britt Torgerson, Locke, Liddell & Sapp, Dallas, TX, for Charles O. Shields and Ilonka J. Harezi.

Darrell D. Minter, Smith, Underwood & Perkins, Dallas, TX, for Brian Newman and Interbancoop Trust.

## MEMORANDUM OPINION AND ORDER

MCBRYDE, District Judge.

Before the court for consideration and determination are plaintiffs' motion for relief pursuant to Federal Rule of Civil Procedure 60(b)(6) and the motion of defendant Leonard D. Miller ("Miller"), in which defendant Charles O. Shields ("Shields") joined, for similar relief. The court has determined that the motions should be granted.

### I.

### *The Motions*

The court is asked by the motions to exercise its powers under Rule 60(b)(6) by vacating a summary judgment the court rendered June 30, 1999, in favor of defendants Charles A. Roberts ("Roberts") and Bel-Air Trust ("Bel-Air") dismissing the claims of the then plaintiffs in this action against Bel-Air and Roberts. Movants urge that equity and the interests of justice would be served by setting the judgment aside to whatever extent it adversely affects, in the case of plaintiffs' motion, the present plaintiffs in this action or, in the case of the other motion, defendants Miller or Shields. Summed up, the common ground of the motions is that, for all practical purposes, the summary judgment was allowed to be granted by default because of lack of motivation of counsel for the then plaintiffs to provide meaningful representation of the interests of the current plaintiffs due to a serious conflict of interest. Movants contend that the record of this action contains evidence that proves that Roberts and Bel-Air participated in appropriating about $2,000,000 belonging to the present plaintiffs, and that Roberts, or entities controlled by him, continue to have those funds.

## II.

### *The Responses to the Motions*

The responses to the motions are made in the names "Charles A. Roberts ('Roberts'), Charles A. Roberts, Former Trustee of the Bel–Air Trust, a Terminated Trust (the 'Bel–Air Trust'), and, Charles A. Roberts, Former Trustee of the Bel–Air Trust, as the Former Trustee of the M1A Trust, a Terminated Trust (the 'M1A Trust')." Roberts's Br. filed 8/27/01 at 1. Respondents argue that:

a.   Because the judgment sought to be set aside was affirmed by the United States Court of Appeals for the Fifth Circuit, movants were obligated to give notice to the Fifth Circuit that the motions had been filed.   Inasmuch as notice was not given to the Fifth Circuit, respondents urge that, "[f]or this reason alone, in order to maintain the dignity of a final adjudication and respect and courtesy for an appellate court's time, Plaintiffs' Rule 60(b)(6) motions should be denied."  *Id.* at 4.

b.   The "law of the case" doctrine prevents the relief sought by the motions.

c.   The motions were not timely filed.

d.   Equity would not be served by grant of the motions.   Respondents contend that even if the attorneys who opposed the motions "were inept, incompetent, and may have committed malpractice," *id.* at 9, there would be no equitable reason for the grant of the motion.

## III.

### *Nature and Pertinent History of the Litigation Pertinent to the Motions*

#### A.   *Institution of the Action.*

This action was instituted on May 13, 1998, by Robert V. DeTour ("DeTour") and Claude D. Smith ("Smith"), who alleged that they were co-administrators of the Claude D. Smith Joint Venture "which consists of themselves and 29 other individual investors."   Compl. at 2.   Roberts, Bel–Air, Miller, and Shields were among the fourteen defendants named in the complaint.   DeTour and Smith alleged that $3,900,000 belonging to the Claude D. Smith Joint Venture was placed in the hands of one of the defendants, upon the recommendation of another defendant, for investment, and that those defendants, as well as the other defendants, participated in various schemes and activities to cause all of the funds to be used for unauthorized and unintended purposes, resulting in a loss to the joint venture of the entire $3,900,000.

According to the complaint, DeTour and Smith are citizens of California, most of the other twenty-nine investors are citizens of California, and the remaining are citizens of either Oregon, Washington, or Maryland.   The attorneys who signed the complaint as counsel for DeTour and Smith were Francis X. Sexton, Jr. ("Sexton"), of Coral Gables, Florida, who was granted permission to appear *pro hac vice* in this action, and Lee F. Christie ("Christie"), a member of the bar of this court practicing in Fort Worth, Texas.   In March 1999, another attorney of Coral Gables, Florida, Warren J. Stamm ("Stamm"), joined in the representation of DeTour and Smith when he was granted leave to appear *pro hac vice*.

The allegations against Roberts and Bel–Air were made upon information and belief.   DeTour and Smith alleged that after the funds had been moved from place to place and from defendant to defendant, and after $1,700,000 of the total had been dissipated by certain defendants, the remaining $2,200,000 was transferred to Roberts and Bel–Air.   They alleged that Roberts and Bel–Air then transferred $500,000 of the funds to another defendant,

but kept $1,700,000, which they have failed and refused to return to the joint venture.

DeTour and Smith sought judgment for damages against all defendants in the amount of $3,900,000, plus interest, costs, attorneys' fees.

B. *The Motion for Summary Judgment of Roberts and Bel–Air, the Ruling on the Motion, and the Appeal.*

On March 5, 1999, Roberts and Bel–Air filed their motion for summary judgment. They acknowledged in their recitation of undisputed facts that they received $2,200,000 for investment purposes from one of the co-defendants, that they had returned $500,000 to that co-defendant, and that they still had possession of $1,700,000. However, they contended that there is no evidence that the money they received and held was part of the $3,900,000 fund that DeTour and Smith claim was, in effect, stolen from the Claude D. Smith Joint Venture. The motion for summary judgment was supported by items that purported to be an affidavit and supplemental affidavits of Roberts.

A brief in opposition to the motion for summary judgment was filed by "Plaintiffs Robert V. DeTour, Claude D. Smith and the Claude D. Smith Joint Venture." Pls.' Br. in Opp'n filed 4/7/99 at 1. DeTour and Smith said that they were relying in support of their opposition on "the pleadings and the affidavits of Defendant Elwin Moore ('Moore') and Claude D. Smith dated, respectively, March 22, 1999 and February 3, 1999." *Id.* No other item was suggested by DeTour and Smith as summary judgment evidence in support of their opposition. The item referred to as an affidavit of Elwin Moore was filed April 5, 1999, and bears the title "Affidavit of Sovereign Development Management Inc. and Elwin C. Moore." However, the so-called affidavit does not have any verification by Moore, and does not qualify as summary judgment evidence—it is not an affidavit or declaration. The document to which DeTour and Smith referred as the affidavit of Smith was filed March 1, 1999, as an exhibit to a motion DeTour and Smith had filed seeking a preliminary injunction against Roberts, Bel–Air, and another party. Again, the so-called affidavit had no verification that would qualify it as an affidavit for summary judgment purposes—it had no value as summary judgment evidence. In the reply brief Roberts and Bel–Air filed April 20, 1999, they explained in detail why the documents on which DeTour and Smith relied as affidavits do not constitute competent summary judgment evidence.

At a hearing conducted May 13, 1999, by United States Magistrate Judge Charles Bleil on certain pretrial matters, Judge Bleil raised the issue of whether items urged as summary judgment evidence by DeTour, Smith, Roberts, and Bel–Air were verified in a manner sufficient to cause them to be treated as evidence. Specific reference was made to the "affidavits" on which DeTour and Smith relied. Judge Bleil made clear that he did not consider that they were verified in such a way to cause them to be summary judgment evidence. He advised counsel that none of the items, as they then existed, would be considered summary judgment evidence, but he gave counsel an opportunity to cure the problems with the purported affidavits by May 21, 1999. At a later point in the hearing, Judge Bleil advised counsel that if anyone present at the hearing "can swear that the matters in their affidavit are within their personal knowledge and are true and correct, they can do that today and so there would be no need to submit further documents with regard to that." Tr. of 5/13/99 at 42–43. He added on the record that he would allow the parties to supplement or reaffirm any summary judgment evidence. *Id.* at 44.

Notwithstanding Judge Bleil's warnings relative to the purported affidavits, and his offer to permit verification of the "affidavit" documents by testimony from the witness stand, when Smith testified at the behest of his counsel, not only did he not cure the lack of verification problem, he affirmatively established that the document he filed as his affidavit would not qualify as summary judgment evidence by acknowledging that its contents were based on "the best of [his] knowledge" and that he did not have personal knowledge of everything in the document. *Id.* at 50–51. When counsel for DeTour and Smith called the other purported affiant, Elwin C. Moore, as a witness, no effort was made to establish the truthfulness of the contents of his "affidavit" or that it was based on his personal knowledge, though he did give testimony that tracked some of the things covered by the document.

Extensive testimony was received at the hearing pertaining to the activities of Roberts and Bel–Air about which DeTour and Smith were complaining. However, DeTour and Smith did not rely in their opposition to the motion for summary judgment on any of the evidence developed at the hearing. They did nothing to cure the deficiencies in the documents they urged as summary judgment evidence. As a result, DeTour and Smith provided no summary judgment evidence in support of their opposition to the March 5, 1999, motion of Robert and Bel–Air.

On June 30, 1999, the court granted the motion for summary judgment, dismissing the claims of DeTour and Smith, individually and as co-administrators of the Claude D. Smith Joint Venture, against Roberts and Bel–Air. The basis of the ruling was that "plaintiffs have not come forward with any admissible summary judgment evidence to establish a genuine fact issue as to any, much less each, element of their claims against movants." 6/30/99 Mem.Op.

5–6. So that an appeal could be perfected, the summary judgment was made final.

DeTour and Smith appealed to the Fifth Circuit. On July 5, 2000, the Fifth Circuit affirmed the summary judgment by an unpublished opinion, holding that "as the record stands, there was no genuine issue as to any material fact, and the defendants-appellees were entitled to judgment as a matter of law." *Detour v. Miller*, No. 99–10827, slip op. at 2, 226 F.3d 641, 2000 WL 1028975 (5th Cir. Jul.5, 2000). With reference to items DeTour and Smith urged as summary judgment evidence, the Fifth Circuit explained:

> The district court did not err in refusing to consider the affidavit evidence. *See* Fed.R.Civ.P. 56(e). Nor did the district court err in failing to consider other evidence in the record which was not presented to the court in conjunction with the opposition to the motion for summary judgment. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment, especially if the nonmoving party was well aware of the existence of such evidence.

*Id.*

### C. *The Sovereign and Moore Motion.*

A fate similar to the claims of DeTour and Smith against Roberts and Bel–Air befell claims that DeTour and Smith had alleged against two other defendants, Sovereign Development Management Company ("Sovereign") and Elwin Moore ("Moore"). On August 4, 1999, Sovereign and Moore moved for summary judgment, seeking dismissal of all claims asserted against them by DeTour and Smith. DeTour and Smith responded on August 31, 1999, offering as their only summary judgment evidence a purported affidavit of Smith and documents purportedly authen-

ticated by that affidavit. Even though Sexton, Stamm, and Christie had already been told that improperly verified affidavits would not be treated as summary judgment evidence, Smith's purported affidavit upon which they relied this time had a form of defective verification identical to those to which Judge Bleil had directed his criticism on May 13, 1999. As a result, the opposition of DeTour and Smith again was not supported by any competent summary judgment evidence. On September 22, 1999, they, through Christie, supplemented their summary judgment opposition by filing a few pages of what they represented to be the oral deposition of Moore. The pages were not authenticated, nor was there any indication in the filing of the part or parts, if any, of the testimony contained on those pages that might be relevant to DeTour and Smith's opposition to the motion for summary judgment.

As DeTour and Smith and their attorneys should have expected, the court granted the motion for summary judgment of Sovereign and Moore on September 28, 1999. Again, the motion was granted because DeTour and Smith simply failed to produce any competent summary judgment evidence in support of their purported claims against Sovereign and Moore. The judgment in favor of Sovereign and Moore was made final so that it would be appealable.

DeTour and Smith appealed to the Fifth Circuit, which, by opinion issued October 19, 2000, dismissed the appeal as frivolous, and granted sanctions in favor of Sovereign and Moore against the attorneys for DeTour and Smith for the filing of the frivolous appeal. The explanation the Fifth Circuit gave for the finding of frivolousness was identical to the explanation it gave for affirming the summary judgment in favor of Roberts and Bel–Air.[1]

## D. The Realignment of the Parties and Withdrawal of Sexton and Stamm from Representation of Plaintiffs.

As a result of information acquired by the court through testimony received and documents filed in connection with, and in the course of, pretrial proceedings, by October 1999 the court had developed serious concerns whether the individual investors who lost the $3,900,000 at issue were being adequately represented in this action by Sexton, Stamm, and Christie through their representation of DeTour and Smith. The court learned that, contrary to the suggestion made by DeTour and Smith in the allegations of their complaint, DeTour and Smith had invested no funds in the Claude D. Smith Joint Venture and had no stake in the recovery of the $3,900,000 lost by the investors; that, DeTour and Smith had participated in the unauthorized and unintended uses of the $3,900,000 fund by causing hundreds of thousands of dollars of the fund to be transferred back to them, for their personal use, by persons they named as defendants in this action; that there were actually about seventy individual investors rather than the twenty-nine mentioned in DeTour and Smith's complaint; and, that DeTour and Smith had engaged in questionable conduct in the solicitation of the fund for investment, and appeared to be at least as culpable as any of the named defendants in causing the losses of the investors. The court's apprehensions were exacerbated by the failure of DeTour

1. On August 6, 2001, the current plaintiffs, acting through Christie, filed a motion pursuant to Rule 60(b)(6) for relief from the summary judgment in favor of Sovereign and Moore. Because it was not accompanied by a certificate of service showing that copies had been served on Sovereign and Moore, or counsel representing them, the court ordered on October 30, 2001 that proof of service be filed. It was never filed, with the result that on January 24, 2002, that motion was ordered stricken from the papers in this action.

and Smith, through Sexton, Stamm, and Christie, to take any meaningful actions to prevent the grant of summary judgments in favor, first, of defendants Roberts and Bel–Air, and, then, in favor of Sovereign and Moore, and by the fact that DeTour and Smith, through their attorneys, caused to be dismissed from the action other originally-named defendants who were directly involved in the improper disposition of the $3,900,000 investment fund.

With the knowledge the court then had, the court concluded that Sexton, Stamm, and Christie could not ethically represent the interests of the individual investors while, at the same time, representing DeTour and Smith. On October 4, 1999, the court ordered that, from that point forward, Sexton, Stamm, and Christie were representing only DeTour and Smith, individually, and not any of the investors, because of the serious conflict of interest existing between DeTour and Smith, on the one hand, and the investors, on the other. As of the time of that order, the court considered the individual investors to be plaintiffs in the action, proceeding *pro se*, along with DeTour and Smith. The individual investors were made aware of the October 4, 1999 order.

By an order signed October 8, 1999, the court authorized any of the investors who wished to reinstate Sexton, Stamm, or Christie as his or her attorney to do so. Thereafter, the court was informed that most of the investors had, indeed, reinstated Sexton, Stamm, and Christie as their

attorneys.[2] However, in March 2000 those attorneys filed a motion for leave to withdraw as counsel for the investor plaintiffs on the ground that the attorneys wished to avoid the appearance of impropriety that existed by reason of their representation of DeTour and Smith at the same time they were representing individual investors. The motion to withdraw was supported by a letter from an attorney who had been employed to provide advice on the ethical issues involved. He expressed the opinion that the providing by the attorneys of legal representation to DeTour and Smith while also representing the investors would be of questionable propriety.

By memorandum opinion and order signed June 4, 2001, the court made the following rulings:[3]

a. The court granted the motion to withdraw as to Sexton and Stamm, but denied it as to Christie. The court realigned the parties by making DeTour and Smith defendants rather than plaintiffs, and ordered that Sexton and Stamm no longer were representing any parties to this action other than DeTour and Smith, individually.

b. The court ordered that Christie no longer provided any representation in the action to DeTour or Smith, in any capacity; that, from June 4, 2001 forward, Christie was the attorney of record for the investor plaintiffs who previously had been represented in the action by Sexton, Stamm, and Christie; and that, from that point

2. From communications received from the individual investors, which have been disclosed to the other parties and counsel, the court thinks it fair to conclude that individual investors chose to reinstate Sexton, Stamm, and Christie because of the lack of resources of the investors to retain counsel in Texas to represent their interests in this action and because Smith had assured the investors that he would bear the attorneys fees and other litigation expenses incurred in this action so

long as Sexton, Stamm, and Christie were serving as the attorneys.

3. The memorandum opinions and orders signed June 4, 2001 and July 19, 2001 give detailed explanations for the rulings the court made in the June 4, 2001 order. Rather than to repeat that detail in this memorandum opinion and order, the court refers to those earlier ones.

forward, the only plaintiffs in the action were the individual investor plaintiffs.

c. The style of the action was changed to the style appearing in the caption of this memorandum opinion and order.

d. The court ordered the investor plaintiffs to file an amended complaint or complaints consistent with the June 4, 2001, memorandum opinion and order, and that they had leave to continue or reinstate as defendants in the amended complaint any defendants previously named in this action who no longer were active defendants by reason of dismissal or summary judgment disposition.

e. The court ordered that if any party was rejoined as a defendant notwithstanding a prior summary judgment disposition in favor of that party, plaintiffs file a motion, such as a motion under FED.R.CIV.P. 60, seeking relief from the summary disposition.

On July 23, 2001, the investor plaintiffs, through Christie, filed an amended complaint that was in substantial compliance with the directives of the June 4, 2001, order. The amended complaint showed DeTour and Smith as defendants, but no claims were asserted against them. Roberts, Bel–Air, Sovereign, and Moore were named as defendants in the amended complaint, and the allegations against them were basically the same as those that had been made in the version of the complaint by which the action was instituted. Then, on August 6, 2001, the investor plaintiffs, again acting through Christie, filed their motion for relief pursuant to Rule 60(b)(6), which is now under consideration. Miller's Rule 60(b)(6) motion, in which Shields joined on June 29, 2000, had been filed in on June 28, 2000. The Miller/Shields motion apparently was triggered by contentions made by Roberts and Bel–Air in their responses to third-party claims asserted against them by Shields and Miller, in January 2000 and June 2000, respective-

ly, that the claims were barred by the June 30, 1999, summary judgment.

Roberts filed vigorous oppositions to the motions for Rule 60(b)(6) relief. In late July or early August 2001, he and Bel–Air filed a strongly worded petition for writs of prohibition and mandamus with the Fifth Circuit, asking, in effect, that the Fifth Circuit order this court to discontinue any proceedings in this action against Roberts or Bel–Air. That petition was denied by a September 7, 2001, order of the Fifth Circuit.

E. *Ruling of the Fifth Circuit Relieving Christie of Further Responsibility to Represent the Investor Plaintiffs.*

Christie filed a motion asking the court to reconsider the ruling made in the June 4, 2001, order denying his motion to withdraw from representation of the investor plaintiffs. After a hearing held July 18, 2001, on the motion to reconsider, it was overruled by memorandum opinion and order signed July 19, 2001. Christie then filed a petition for writ of mandamus with the Fifth Circuit complaining of the denial of his motion to withdraw. On September 7, 2001, the Fifth Circuit granted Christie's petition, ordering that "Mr. Christie is relieved of further obligation to represent investors as plaintiffs in this case beyond giving such assistance as is practicable to the investors in obtaining new counsel incident to his withdrawal." *In re Lee F. Christie,* No. 01–10944, slip op. at 2 (5th Cir. Sept. 7, 2001).

F. *Current Status.*

On November 20, 2001, the court ordered Christie to make a report to the court describing all assistance he provided to the investors in obtaining new counsel and informing the court of his perception of his status in this case at that time, including his perception of his obligation, if

any, to continue to act on behalf of the investor plaintiffs, or any of them, in any matter related to this action. Christie filed a response on November 27, 2001, advising that he had continued to engage in certain activities on behalf of the investor plaintiffs for whom he had provided legal representation because of his belief that "he had and has an obligation to provide reasonable assistance to the individual investors to wrap up outstanding matters requiring immediate attention, to assist the Investor–Plaintiffs in identifying potential substitute counsel, and to reasonably cooperate with that counsel in effectuating a transition between counsel." 11/27/01 report at 5. He also reported that his intent was "to take reasonable steps to complete matters that were pending or in process prior to the Fifth Circuit's mandate, but does not anticipate filing any new or additional pleadings or requests for relief unless specifically requested by this [court]." *Id.*

Since that report, the court has received no communication from Christie or from any attorney employed to replace Christie as counsel of record for any of the investor plaintiffs. Thus, as matters now stand, the investor plaintiffs apparently enjoy a *pro se* status in this litigation, subject to whatever ongoing legal representation Christie might be providing them pursuant to the obligations he professed to have in the wrapping-up of outstanding matters and the completion of matters that were pending or in process prior to the Fifth Circuit's September 7, 2001, mandate.

## IV.

### *Rule 60(b)(6) Principles Applicable to this Case*

The pertinent part of Rule 60(b) of the Federal Rules of Civil Procedure reads as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time....

FED.R.CIV.P. 60(b) (emphasis added). This rule "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The rule "should be liberally construed in order to do substantial justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Unit A Jan.1981). *See also Laguna Royalty Co. v. Marsh*, 350 F.2d 817 (5th Cir.1965). It "is applied most liberally to judgments in default" *Seven Elves, Inc.*, 635 F.2d at 403. "[Al]though the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.* at 401.

Referring in particular to clause (6) of the rule, the Supreme Court explained in *Liljeberg* that it

grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just," provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States,* 335 U.S. 601, 614–615, 69 S.Ct. 384, 93 L.Ed. 1099 (1949), while also cautioning that it should only be applied in "extraordinary circumstances," *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

486 U.S. at 863–64, 108 S.Ct. 2194 (footnote omitted). The broad power given a court by clause (6) was explained by the Fifth Circuit in *Menier v. United States,* as follows:

> The broad language of clause (6) gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice. Clause (6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses. This court has recognized and implemented wide equitable force and effect for Rule 60(b)(6).

405 F.2d 245, 248 (5th Cir.1968) (citations and internal quotations omitted). The "court enjoys considerable discretion when determining whether the movant has satisfied [the clause (6) standard]." *Teal v. Eagle Fleet, Inc.,* 933 F.2d 341, 347 (5th Cir.1991).

Determining what constitutes a "reasonable time" for the filing of a motion under clause (6), "depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Travelers Ins. Co. v. Liljeberg Enters., Inc.,* 38 F.3d 1404, 1410 (5th Cir.1994) (quoting *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th Cir.1981)). An interval of more than two years has been considered to be reasonable. *Montco, Inc. v. Barr (In re Emergency Beacon Corp.),* 666 F.2d 754, 760 (2d Cir.1981).

The existence of a conflict of interest on the part of the movant's attorney when the judgment was entered can qualify as an extraordinary case justifying Rule 60(b)(6) relief. *Gray v. Estelle,* 574 F.2d 209, 214–15 (5th Cir.1978).

The Fifth Circuit has said that, in considering the applicability of Rule 60(b)(6), the court "should not stray too far into technical niceties," bearing in mind that the rule "is a flexible tool designed to do substantial justice." *Fackelman v. Bell,* 564 F.2d 734, 736–37 (5th Cir.1977). When considering the possibility of setting aside a default judgment, the Supreme Court said in *Klapprott v. United States* that "the language of the 'other reason' clause of 60(b) is broad enough to authorize the Court to set aside the default judgment and grant petitioner a fair hearing." 335 U.S. 601, 615, 69 S.Ct. 384, 93 L.Ed. 1099 (1949).

The fact that the judgment sought to be set aside had been affirmed on appeal does not impair the trial court's ability to grant Rule 60(b) relief. *Standard Oil Co. v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).

## V.

### *Reasons for Granting the Motions*

There are plausible arguments that the June 30, 1999, judgment does not preclude the claims of Miller and Shields, and that it would not be a bar to the claims of the

investors, against Roberts and Bel–Air. As to Miller and Shields, they were not parties to the judgment, had no standing to appeal from it, and, therefore, should not be affected by it. And, as to the claims of the investors, the court has noted several times throughout this litigation there is a serious conflict of interest between DeTour and Smith, on the one hand, and the individuals they purported to represent as co-administrators of the Claude D. Smith Joint Venture, on the other, with the consequence that the same counsel could not ethically represent the investors while representing DeTour and Smith. So egregious was the conflict that the conclusion could be reached that the investors and their interests simply were not before the court for adjudication when the judgment was granted.[4] However, because Roberts and Bel–Air have so vigorously contended that the claims against them by the investors, Shields, and Miller are foreclosed by the judgment, the court is deciding the Rule 60(b)(6) motions on the assumption that the judgment, if not vacated, would have that effect.

Following the grant of the motion for summary judgment at issue in June 1999, and after Shields filed his third-party claims against Roberts and Bel–Air, Shields conducted discovery against Roberts, taking his deposition and forcing the production of documents. Armed with that discovery, Shields represented to the court in a document he filed May 17, 2001, that:

No matter what spin or argument Roberts wants to make, the undisputed facts are that in September 1996, Mr. Shields transferred $3.9 million (not any more) to Craig Elkins. It is also undisputed that the $1.7 million entrusted to Mr. Roberts in October of 1996, originated from the $3,9 million transferred to Craig Elkins.

Shields's Resp. to Roberts's Mot. to Compel filed 5/17/2001, at 2. Nor does it appear to be substantially disputed that the fund that Shields transferred to Elkins is the $3,900,000 that the investor plaintiffs in this action gave to Shields, at the behest of DeTour and Smith, for investment purposes.[5]

Even if, notwithstanding the obligations of Shields and his counsel under Rule 11 of the Federal Rules of Civil Procedure, the above-quoted assertion is not entirely accurate, the court is satisfied from the information that has come to the court's attention during pretrial, through documents filed and testimony the court has heard, that there is a prospect that the evidence at trial will establish that Roberts and Bel–Air received $2,200,000 of the $3,900,000 investment fund in October 1996, and that they have retained $1,700,000 of that fund. The court believes that, if plaintiffs are properly represented in this action, they could well recover $1,700,000, plus pre-judgment interest thereon, from Roberts and Bel–Air at trial. And, if that were to occur, Shields and Miller would stand to benefit by the reduc-

---

**4.** Roberts virtually acknowledged that the investors were not parties at that time by his assertion in a document he filed March 9, 1999, that, if Smith was a participant in the misappropriation of the investors' monies, the investors "ought to be made parties hereto, but they should be represented by independent counsel." Roberts's Resp. filed 3/9/99 at 3–4.

**5.** Roberts has contended that the $3,900,000 transferred from Shields to Elkins cannot all be traced to the investor plaintiffs because, according to Roberts, the records show that the monies entrusted by the investors with Shields were commingled in Shields's bank account with other funds generated through a separate investment scheme of DeTour, Smith, and Shields. The court is not required to resolve that issue in ruling on the pending motions.

tion of whatever liability is imposed on them in favor of the investor plaintiffs by the amount of recovery the investors realize from Roberts and Bel–Air. For those reasons, the court has concluded that equity and the interests of justice would be served if the investor plaintiffs, Shields, and Miller were to be permitted to assert their claims against Roberts and Bel–Air free of any encumbrance that might be created by the June 30, 1999, judgment.

No one can reasonably deny that throughout this litigation, until Sexton, Stamm, and Christie were permitted to withdraw, the interests of the investor plaintiffs were not properly represented by those attorneys. Obviously the opposition made by DeTour, Smith, and their attorneys to the Roberts/Bel–Air motion for summary judgment was not up to professional standards—indeed, the opposition was as unprofessional as any the court has encountered. The only items offered as summary judgment evidence in opposition to the motion were patently defective—defects that would be readily apparent to any competent attorney. The attorneys were told of the defectiveness by Magistrate Judge Bleil and were given an opportunity by Judge Bleil to cure the defects, yet they did nothing. For all practical purposes, Detour, Smith, Sexton, Stamm, and Christie allowed a default summary judgment to be entered in favor of Roberts and Bel–Air and, later, another in favor of two other defendants.

Roberts and Bel–Air are not in a position to contend that the interests of the investor plaintiffs were being adequately represented when they received their summary judgment. They asserted in their motion that:

> The counterclaim of Defendant Shields (who is in a position to know) suggests a reason: it alleges that Smith, himself, criminally converted funds of the true owners.... If true, this would suggest

that the rather dilatory initiation and prosecution of this cause may be part of a strategy of mollifying and pacifying the victims of said fraud so as not to act against Smith.

Roberts's Mot. for Summ.J. filed 3/3/99 at 12 n. 2. And, when discussing the allegation made by Shields in one of his pleadings that Smith has stolen substantial sums from the investors, Roberts and Bel–Air said:

> If this is the case, then the law firm representing the plaintiffs in this case has a grotesque conflict of interest in purporting to represent (or serving as "blanket counsel" for) the 29 investors....

Resp. of Roberts filed 3/9/99 at 3.

The lack of proper representation in this action of the interests of the investors when the June 30, 1999, judgment was rendered constitutes an extraordinary circumstance that justifies setting the judgment aside as it might affect the movants. The setting aside of the judgment is necessary to accomplish substantial justice in this case. It would not cause injustice to Roberts or Bel–Air. On the other hand, if the judgment is not set aside as to the movants, there is a risk that the public's confidence in the judicial process will be undermined.

The motions were filed within a reasonable time. As to the investor plaintiffs, their motion was filed shortly after they were designated as the only plaintiffs in this action, and they were relieved of the burden of the inappropriate legal representation that was being provided to them by Sexton and Stamm, who apparently were serving as the lead attorneys for DeTour and Smith in this action. They could not have been expected to move for Rule 60(b)(6) relief earlier than they did. As to Miller and Shields, they moved for Rule 60(b)(6) relief soon after they learned

that Roberts and Bel–Air were contending that their third-party claims were barred by the June 30, 1999, judgment. Again, they could not have been expected to seek relief from the judgment at an earlier time.

The contention of Roberts and Bel–Air that the Rule 60(b)(6) motions cannot proceed because of the failure of the movants to give notice to the Fifth Circuit that the motions had been filed is put to rest by *Standard Oil. Supra* at 575. Nor is the "law of the case" response meritorious. While the Rule 60(b)(6) motions put in issue the circumstances under which the June 30, 1999, judgment was granted, the movants do not seek by their motions an adjudication on the merits of the ultimate relief they seek in this action against Roberts and Bel–Air.

Therefore, the motions are being granted.

## VI.

### ORDER

The court ORDERS that plaintiffs' motion for relief pursuant to 60(b)(6), and the Rule 60(b)(6) motion of Miller, in which Shields has joined, be, and are hereby, granted.

The court further ORDERS that all individual investors whose investment funds are at issue in this action, including all persons who are plaintiffs in this action, be, and are hereby, relieved of any effect of the June 30, 1999, summary judgment dismissing the claims of DeTour and Smith, individually and as co-administrators of the Claude D. Smith Joint Venture, against Roberts and Bel–Air, and that such judgment be, and is hereby, set aside to whatever extent it could affect such individual investors.

The court further ORDERS that Miller and Shields be, and are hereby, relieved of any effect of the June 30, 1999, summary judgment dismissing the claims of DeTour and Smith, individually and as co-administrators of the Claude D. Smith Joint Venture, against Roberts and Bel–Air, and that such judgment be, and is hereby, set aside to whatever extent it could affect Miller or Shields.